THE LAW FIRM OF RAVI BATRA, P.C.
The Batra Building
142 Lexington Avenue
New York, New York 10016
(212) 545-1993
(212) 545-0967 (fax)
Ravi Batra (RB 4299)
Todd B. Sherman (TS 4031)
*Attorneys for Defendant Sonia Gandhi*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SIKHS FOR JUSTICE INC (SFJ), on behalf of deceased and injured members of the Sikh community,

JASBIR SINGH, Individually and on behalf of deceased family members,

MOHENDER SINGH, Individually and on behalf of his deceased father, SARDAR DARSHAN SINGH,

*Plaintiffs*,

- against -

SONIA GANDHI, a national and citizen of India, in her personal capacity and as President Indian National Congress a/k/a, "CONGRESS (I)",

*Defendant*.

**Docket No. 13 Civ. 4920 (BMC)**

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT SONIA GANDHI FOR, *INTER ALIA*, DISMISSAL OF THE AMENDED COMPLAINT

*Of counsel*:
Ravi Batra (RB 4299)
Todd B. Sherman (TS 4031)
*On the brief*

**TABLE OF CONTENTS**


TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . 1

POINT I: SERVICE OF PROCESS WAS INSUFFICIENT AND THERE IS NO PERSONAL JURISDICTION OVER MRS. GANDHI: SHE WAS NOT IN THE UNITED STATES DURING SEPTEMBER 2, 2013 THROUGH SEPTEMBER 9, 2013 . . . . . . . . . . 2

POINT II: THE COURT LACKS SUBJECT MATTER JURISDICTION . . . . . . . . 8

- *THERE IS NO SUBJECT MATTER JURISDICTION FOR 'FOREIGN CUBED' EXTRATERRITORIAL CLAIMS UNDER ATS* . . . . . . . . . . 8
- *"SIKHS FOR JUSTICE" IS NOT A PROPER PLAINTIFF REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)* . . . . . . . . . . 9
- *MOHENDER SINGH IS NOT A PROPER REPRESENTATIVE PLAINTIFF REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)* . . . . . . . . . . 11
- *THE FIRST AMENDED COMPLAINT REQUIRES THAT MRS. GANDHI BE AFFORDED IMMUNITY FROM SUIT* . . . . . . . . . . 12
- *PLAINTIFFS ARE IMPROPERLY SEEKING RELIEF AGAINST "CONGRESS(I)" BY WAY OF A SUIT WRONGLY BROUGHT AGAINST MRS. GANDHI* . . . . . . . . . . 14
- *THE STATUTE OF LIMITATIONS HAS EXPIRED AND THERE IS NO BASIS FOR EQUITABLE TOLLING* . . . . . . . . . . 15

POINT III: THE AMENDED COMPLAINT FAILS TO STATE A CLAIM . . . . . . . . . . 21

POINT IV: THE BULK OF THE AMENDED COMPLAINT OUGHT BE STRICKEN . . . . . . . . . . 26

POINT V: SIKHS FOR JUSTICE SHOULD BE ENJOINED FROM FURTHER LITIGATION . . . . . . . . . . 28

POINT VI: IF NOT DISMISSED, THIS MATTER OUGHT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a) . . . . . . . . . . 29

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) . . . . . . . . . . 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . 21, 24

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . 19

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) . . . . . . . . . . 4

*Ball v. Metallurgie Hoboken– Overpelt*, 902 F.2d 194 (2d Cir.1990) . . . . . . . . . . 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . 21, 24

*Berlanti Const. Co. v. Republic of Cuba*, 190 F. Supp. 126 (S.D.N.Y. 1960) . . . . . . . . . . 4

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) . . . . . . . . . . 5

*Blue Ocean Lines v. Universal Process Equip., Inc.*, 1993 WL 403961 (S.D.N.Y. Oct. 7, 1993) . . . . . . . . . . 4

*Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142 (2d Cir.1993) . . . . . . . . . . 19

*Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005) . . . . . . . . . . 4

*Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009) . . . . . . . . . . 17

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) . . . . . . . . . . 5

*Columbia Pictures Indus. v. Fung*, 447 F.Supp.2d 306 (S.D.N.Y. 2006) . . . . . . . . . . 30

*Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42 (2d Cir.1991) . . . . . . . . . . 19

*Craig v. First Web Bill, Inc.*, 2004 WL 2700128 (E.D.N.Y. Nov. 29, 2004) . . . . . . . . . . 7

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) . . . . . . . . . . 17

*Dove v. Fordham Univ.*, 56 F.Supp.2d 330 (S.D.N.Y.1999) . . . . . . . . . . 24

*Ellul v. Congregation of Christian Bros.*, 2011 WL 1085325 (S.D.N.Y. Mar. 23, 2011) . . . . . 17

*Family Internet, Inc. v. Cybernex, Inc.*, 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) . . . . . . . . . . . 7

*Friedman v. Bayer Corp.*, 1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) . . . . . . . . . . . . . . . . 15

*G-I Holdings, Inc. v. Baron & Budd*, 238 F.Supp.2d 521 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . 27

*Giraldo v. Drummond Co., Inc.*, 2013 WL 3873965 (N.D. Ala. July 25, 2013) . . . . . . . . . . . . . 26

*Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . 20

*Goldenberg v. Lee*, 1999 WL 390611 (E.D.N.Y. Apr. 15, 1999) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Grimes v. Fremont General Corp.*, F.Supp.2d 584 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . 27

*Grosshandels- Und Lagerei- Berufsgenossenschaft v. World Trade Ctr. Properties, LLC*, 435 F.3d 136 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997) *aff'd*, 173 F.3d 844 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hua Chen v. Honghui Shi*, 2013 WL 3963735 (S.D.N.Y. Aug. 1, 2013) . . . . . . . . . . . . . . . . . . . 5

*In re Parmalat Sec. Litig.*, 477 F.Supp.2d 637 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re September 11 Litig.*, 760 F. Supp. 2d 433 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . 11-12

*In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456 (S.D.N.Y. 2010) *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013) . . . . . . . . . . . . . . . 4

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118 (2d Cir. 2013) . . . . . . . . . . . . 10-11

*In re Vitamin C Antitrust Litigation*, 2012 WL 4511308 (E.D.N.Y. Oct. 1, 2012) . . . . . . . . . . . 20

*Javier H. v. Garcia- Botello*, 239 F.R.D. 342 (W.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . 12

*Jesner v. Arab Bank, PLC*, 2009 WL 4663865 (E.D.N.Y. May 1, 2009) . . . . . . . . . . . . . . . . . . 16

*Joseph S. v. Hogan*, 561 F. Supp. 2d 280 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) . . . . . . . . . . . . . . . . . . . . 30

*Khan v. Khan*, 360 F. App'x 202 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kiobel v. Royal Dutch Petroleum Co.*, — U.S. —, 133 S. Ct. 1659 (2013) . . . . . . . . . . . . 8-9, 28

*Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010)
*aff'd*, — U.S. —, 133 S. Ct. 1659 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kohn v. Unique Truckers, Riggers & Millwrights, Inc.*, 1998 WL 661517
(E.D.N.Y. July 29, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kwon v. Yun*, 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lafontant v. Aristide*, 844 F. Supp. 128 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah,*
184 F.Supp.2d 277 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Levy v. Welsh*, 2013 WL 1149152 (E.D.N.Y. Mar. 19, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Liu Bo Shan v. China Const. Bank Corp.*, 421 F. App'x 89 (2d Cir. 2011) . . . . . . . . . . . . . . . . 25

*Malcolm v. Board of Educ. of Honeoye Falls-Lima Cent. School Dist.*,
506 Fed. Appx. 65 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Manliguez v. Joseph*, 226 F. Supp. 2d 377 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Manoharan v. Rajapaksa*, 845 F. Supp. 2d 260 (D.D.C. 2012)
*aff'd*, 711 F.3d 178 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mareno v. Rowe*, 910 F.2d 1043 (2d Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mohamad v. Palestinian Auth.*, — U.S. —, 132 S. Ct. 1702 (2012) . . . . . . . . . . . . . . . . . . . 10, 15

*Mohammad v. Bin Tarraf*, 300 Fed. App'x. 87 (2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Morabito v. Blum*, 528 F.Supp. 252 (S.D.N.Y.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Muntslag v. D'Ieteren, S.A.*, 2013 WL 2150686 (S.D.N.Y. May 17, 2013) . . . . . . . . . . . . . . . . . . 9

*Niles v. Wilshire Inv. Group, LLC*, 859 F.Supp.2d 308 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . 28-29

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987) . . . . . . . . . . . . . . . . . . . . 4

*Onwuka v. NYC Taxi Limousine Comm'n*, 2012 WL 34090 (E.D.N.Y. Jan. 6, 2012) . . . . . . . . 24

*Orkin v. Swiss Confederation*, 770 F. Supp. 2d 612 (S.D.N.Y. 2011)
*aff'd*, 444 F. App'x 469 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633
(S.D.N.Y. 2006) *aff'd,* 582 F.3d 244 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009) . . . . . . . 25

*Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124 (E.D.N.Y. 2004) . . . . 30

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009)
*aff'd*, 387 F. App'x 72 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Samantar v. Yousuf*, 560 U.S. 305 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*San Diego Cnty. Employees Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104 (S.D.N.Y. 2010) . . . . 7

*Shakour v. Fed. Republic of Germany*, 199 F. Supp. 2d 8 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . 7

*Shan v. China Const. Bank Corp.*, 2010 WL 2595095 (S.D.N.Y. June 28, 2010)
*aff'd*, 421 F. App'x 89 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) . . . . . . . . . . . . . . 2, 10, 15, 17, 24

*Smaldone v. Senkowski*, 273 F.3d 133(2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d. Cir.2002) . . . . . . . . . . . . . . . . . . . . 24

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir.2006) . . . . . . . . . 6

*Sosa v. Alvarez–Machain*, 542 U.S. 692, 124 S.Ct. 2739 (2004) . . . . . . . . . . . . . . . . . . . . . 13, 28

*Tel-Oren v. Libyan Arab Republic,* 726 F.2d 774 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . 13

*Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 314 (E.D.N.Y. 2013) . . . . . . . . . . . . 19

*Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691 (S.D.N.Y. February 7, 1995) . . . 27

*Underhill v. Hernandez*, 168 U.S. 250 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Van Tu v. Koster*, 364 F.3d 1196 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Velez v. Sanchez*, 693 F.3d 308 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . 30

*Wallace v. Kato*, 549 U.S. 384 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Wego Chem. & Mineral Corp. v. Magnablend Inc.*, 2013 WL 2211460
(E.D.N.Y. May 21, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.*,
889 F. Supp. 2d 912 (S.D. Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Yanouskiy v. Eldorado Logistices Sys., Inc.*, 2006 WL 3050871
(E.D.N.Y. Oct. 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Yaxin Jing v. Angel Tips, Inc.*, 2013 WL 950585 (E.D.N.Y. Mar. 11, 2013) . . . . . . . . . . . . . . 4-5

*Zapolski v. Fed. Republic of Germany*, 2010 WL 1816327 (E.D.N.Y. May 4, 2010)
*aff'd*, 425 F. App'x 5 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) . . . . . . . . . . . . . . 16

*Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . 5

**NEW YORK STATE CASES**

*Carte v. Parkoff*, 152 A.D.2d 615 (2d Dept. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Laufer v. Ostrow*, 55 N.Y.2d 305 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mingone v. State of New York*, 100 A.D.2d 897(2d Dept. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 11

**UNITED STATES CONSTITUTION**

U.S. Const. Art. II, § 2, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 19

Fed. R. Civ. P. 12(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fed. R. Evid. 803(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8 U.S.C. § 1101(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C.§ 1332(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C.§ 1350 ("ATS") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C.§ 1350, note ("TVPA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

TVPA § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TVPA § 2(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TVPA § 2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TVPA § 2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

50 App. U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

50 App. U.S.C. § 1989 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**NEW YORK STATE STATUTES**

C.P.L.R. § 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

C.P.L.R. § 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.P.L.R. 503(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Est. Powers & Trusts Law § 1-2.13 . . . . . . . . . . . . . . . . . . . . . . . . . 11

Est. Powers & Trusts Law § 5-4.1(1) . . . . . . . . . . . . . . . . . . . . . . . . 11

Est. Powers & Trusts Law § 11-3.2(b) . . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL LEGISLATIVE MATERIALS**

H.R.Rep. No. 102–367 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**UNITED STATES GOVERNMENT MATERIALS**

United States Department of State, Background Notes: India, Washington GPO, 2000 *available at*, www.state.gov/outofdate/bgn/india/26114.htm at Political Conditions, *last accessed* December 23, 2013. . . . . . . . . . . . . . . . . . . . . . 18-19

United States Department of State, Background Notes: India, Washington GPO, 2004 *available at*, http://www.state.gov/outofdate/bgn/india/ 47474.htm at Political Conditions, *last accessed*, December 23, 2013 . . . . . . . . . . . . . . . . . . . . . . . 19

**FOREIGN GOVERNMENT MATERIALS**

*Justice Nanavati Commission of Inquiry* (India) (Sept. 2, 2005), http://mha.nic.in/hindi/sites/ upload_ files/mhahindi/files/pdf/ Nanavati-I_eng.pdf (*last accessed* December 19, 2013) *also available at*, http://www.sikhsforjustice.org/?q=content/nanavati-commission-feb- 2005 (*last accessed* December 19, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of defendant Sonia Gandhi ("Mrs. Gandhi")'s motion to dismiss the First Amended Complaint (D.E. 17) ("FAC") purporting to sound in claims under the Alien Tort Statute (28 U.S.C.§ 1350) ("ATS") and the Torture Victim Protection Act of 1991 ("TVPA") (28 U.S.C.§ 1350, note) and for additional related relief.

The instant lawsuit is but one of at least two different putative federal class action proceedings commenced by "Sikhs For Justice" (*See* FAC and Batra Dec. Exs. 6-7) - a New York corporation (FAC ¶ 32) which has sought relief under ATS - notwithstanding that only an "Alien" can afford itself of same - as well as under the TVPA. SFJ is not an "Alien" and as an entity is incapable of being tortured or killed. In addition, SFJ has never alleged to be the "legal representative" of anyone claiming to be tortured or killed. Moreover, based on representations by plaintiffs' counsel, at least one of the individually named plaintiffs is also a United States Citizen (Batra Dec. ¶ 13). Hence, not an Alien. The instant putative action purports to seek relief for extraterritorial events wholly occurring within the sovereign borders of India in 1984. Thus, it is barred both because of the lack of any connection to the United States and the nearly two decade long expiry of the statute of limitations. Furthermore, as pled, the FAC alleges that the defendant was, during the events complained of in India, partnered with her husband Rajiv Gandhi, then head of state. Therefore, based on the pleadings, Mrs. Gandhi is immune from suit.

The plaintiffs are engaged in a concerted effort to abuse their access to the federal courts for what amounts to nothing more than receiving publicity. Indeed, the predicate FAC suffers from significant infirmities - including issues that the Honorable Court brought to the plaintiffs' counsel's attention before granting leave to amend. Notably, in addition to the judicial guidance

provided to the plaintiffs at the Rule 16 Conference in the instant matter, prior to commencing this action, the plaintiffs in a similar claim arising from the same 1984 events in India - had counts dismissed in the Southern District of New York ("SDNY") for the same types of defective pleading. *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012).

Knowing of the legal infirmities of their claims and the impropriety of seeking relief in United States Courts, plaintiffs persist here with same and now expand the groundless litigation against Mrs. Gandhi. In the FAC the plaintiffs have interposed boilerplate, formulaic, non-specific allegations of conduct by Mrs. Gandhi, acting in an official capacity; however, in a futile attempt to escape from the bar on such suits against corporate entities and non-designated foreign governments, without any pleading support and devoid of any basis in fact, the plaintiffs have sought to also include Mrs. Gandhi as an individual. Given that there is not a single non-conclusory allegation against Mrs. Gandhi throughout the FAC, beyond lack of personal and subject matter jurisdiction, there is also no claim stated.

## POINT I

## SERVICE OF PROCESS WAS INSUFFICIENT AND THERE IS NO PERSONAL JURISDICTION OVER MRS. GANDHI: SHE WAS NOT IN THE UNITED STATES DURING SEPTEMBER 2, 2013 THROUGH SEPTEMBER 9, 2013

Based on un-sourced, at best hearsay, statements in a foreign published internet news article, the plaintiffs moved this Honorable Court, *ex parte*, for an Order authorizing alternative service in the instant lawsuit sounding in broad stroked claims pursuant to ATS and the TVPA. Plaintiffs' clearly sought to infer that because the article was supposedly entitled "Sonia Gandhi expected in US for medical check up" that Mrs. Gandhi was, in fact, in New York City (*see e.g.* Plaint. Aff. OSC [D.E. 6-1] at ¶ 6). This suggestion was, in fact, false (Batra Dec. Ex. 1) - not

surprising, given that the actual article makes clear that it was merely regurgitating the hearsay reports of other media outlets.[1] *Id.* at Ex. 2.

Notwithstanding the unsubstantiated application which resulted in this Honorable Court's service Order (D.E. 7), even its terms were not complied with, and the Affirmation of Service proffered by the plaintiffs (D.E. 11) is devoid of *prima facie* evidence to support service of process upon Mrs. Gandhi. The Court clearly required that any service at Sloan-Kettering be "during the time that defendant is at the hospital" and that service by delivery to security personnel be "during the time defendant is in New York, NY." (D.E. 7). Yet, no proof has been proffered by the plaintiffs of Mrs. Gandhi's presence in New York. Furthermore, by its terms, the service Order also required that hospital or security personnel who received the pleadings "to give the documents served upon them to defendant." *Id.*.

As the plaintiffs' blindly relied on multi-fold hearsay media reports it is not surprising that all of their claimed efforts were for naught. Mrs. Gandhi was not in New York, nor were the summons and complaint ever served on Mrs. Gandhi (Batra Dec. Ex. 1). Accordingly, the summons and complaint were never delivered to Mrs. Gandhi in accordance with the terms of Judge Cogan's Order. Given the lack of service, and Mrs. Gandhi's non-presence, there is no basis for this Honorable Court to exercise personal jurisdiction over her.

---

[1]What the plaintiffs withheld from the Court was that the authors of the article, actually entitled "Sonia Gandhi expected in U.S. for medical check-up: <u>media</u>" (*id.*) (<u>emphasis added</u>), indicated that they relied upon reporting by "the Press Trust of India (PTI) news agency" which allegedly reported that "[t]here is a <u>speculation</u> [Mrs. Gandhi] <u>may</u> fly there on Monday[.]" *Id.* (<u>emphasis added</u>). Thus, the plaintiffs failed to disclose to the Court that their application was rooted in unsupported multi-fold hearsay. Nevertheless, the "factual" substance of their application boiled down to an incorrect suggestion that "<u>[u]pon information and belief</u>, defendant Gandhi has been present in New York since September 2, 2013 for medical check-up at Memorial Sloan Kettering Cancer Center, in New York City, NY. . ." (D.E. 6-1 ¶ 6) (*sic*) (<u>emphasis added</u>).

Proper service of the summons and complaint upon Mrs. Gandhi was a procedural prerequisite to exercising personal jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–445 (1946). Here, the District Court Ordered alternative service in detrimental reliance of a faulty premise asserted by the plaintiffs; however, the terms of the Order permitting same have never been met. "For substitute service to meet the requirements of due process, it must be reasonably calculated, under the circumstances, to provide notice to interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, 490 (S.D.N.Y. 2010) *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013). Notwithstanding the service Order, none of its conditions were met, nor was any real attempt made by plaintiffs to prove having met them in their putative Affirmation of Service. Rather, the plaintiffs have not demonstrated that putative service was "effectuated strictly according to the statutory provisions[.]" *Berlanti Const. Co. v. Republic of Cuba*, 190 F. Supp. 126, 128 (S.D.N.Y. 1960). Plaintiffs have not met their service burden.

Moreover, "[o]nce a defendant challenges the sufficiency of service of process, 'the burden of proof is on the plaintiff to show the adequacy of service.'" *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997) *aff'd*, 173 F.3d 844 (2d Cir. 1999) *quoting, Blue Ocean Lines v. Universal Process Equip., Inc.*, 1993 WL 403961, *4 (S.D.N.Y. Oct. 7, 1993). *See also Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) *citing, Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). Accordingly, "the plaintiff must, 'through specific factual allegations and any supporting materials, make a prima facie showing that service was proper.'" *Yaxin Jing v. Angel Tips, Inc.*, 2013 WL 950585 (E.D.N.Y. Mar. 11, 2013)

*quoting*, *Kwon v. Yun*, 2006 WL 416375, at *2 (S.D.N.Y. Feb.21, 2006). As Mrs. Gandhi was not in the United States, in New York or at Memorial Sloan-Kettering Cancer Center, this plaintiffs have not done and can not do.

According to the Affirmation of Service, plaintiffs' counsel hand delivered the summons and complaint to 3 different people at Sloan-Kettering (D.E. 11); however, the Affirmation is eerily silent as to the delivery of the served documents to Mrs. Gandhi as Ordered by Judge Cogan. *Id.*. Moreover, the Affirmation is also silent as to Mrs. Gandhi's presence at the hospital at the time of delivery, or even as to Mrs. Gandhi's alleged presence in "New York, NY." *Id.*. Absent proper service there is simply no basis for *in personam* jurisdiction over Mrs. Gandhi. Even the plaintiffs have not attempted to establish any basis for jurisdiction other than presence, in accordance with C.P.L.R. § 301 (FAC ¶ 31). Accordingly, the plaintiffs have far from met what is their burden.

Where, as here, "none of the New York long-arm statute's provisions confers personal jurisdiction over Defendant, the Court must dismiss this action and need not consider whether exercising personal jurisdiction over Defendant comports with constitutional due process." *Hua Chen v. Honghui Shi*, 2013 WL 3963735 (S.D.N.Y. Aug. 1, 2013) *citing*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). *See also Zibiz Corp. v. FCN Tech. Solutions*, 777 F. Supp. 2d 408, 421 (E.D.N.Y. 2011) *quoting*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) ("[i]n determining the strength of the contacts under both section 302(a)(1) and the Due Process Clause, [courts] look to the totality of Defendants' contacts with the forum state'"). In order to establish personal jurisdiction under New York law by way of the long-arm statute "'two requirements must be met: (1) the defendant must have transacted

business within the state; and (2) the claim asserted must arise from that business activity.'" *Wego Chem. & Mineral Corp. v. Magnablend Inc.*, 2013 WL 2211460 (E.D.N.Y. May 21, 2013) *quoting*, *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Furthermore, C.P.L.R. § 302, New York's long-arm

> statute's first, second, and fourth grounds clearly cannot apply because the Complaint contains no allegations that Defendant has engaged in commercial activity touching this state; committed tortious acts in New York; or owns, uses, or possesses any real estate here. The third ground, covering tortious acts committed outside New York, applies only to acts that injure 'person[s] or property within [New York].' Here, however, all of Plaintiffs' alleged injuries occurred in [India] while they resided there as [Indian] citizens. As a legal matter, it is immaterial that Plaintiffs now reside in the United States and that [any plaintiff] continues to suffer from memories of her detention and torture. For purposes of applying § 302(a)(3), '[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.'

*Hua Chen* at *5, *quoting*, *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir.1990). *See also Kohn v. Unique Truckers, Riggers & Millwrights, Inc.*, 1998 WL 661517 (E.D.N.Y. July 29, 1998) *quoting*, *Mareno,* 910 F.2d at 1046 (*citing*, *Carte v. Parkoff*, 152 A.D.2d 615, 616 (2d Dept. 1989)).

The FAC contains no factual allegations that would give rise to *in personam* jurisdiction over Mrs. Gandhi. All of the alleged conduct occurred in India, there are no allegations of any nexus between Mrs. Gandhi and New York and the allegations have nothing to do with Mrs. Gandhi's alleged, albeit false, hospitalization - which is the only link to New York that the plaintiffs have ever suggested. Critically, the entirety of the allegations related to personal jurisdiction proffered by the plaintiffs are the conclusory assertion that "[t]his Court has personal

jurisdiction of the Defendants pursuant to Rule 4, Fed. R. Civ. P. and N.Y.C.P.L.R. 301" (FAC ¶ 31).[2]

Importantly, C.P.L.R. § 301 "'was intended to codify the traditional common law bases of personal jurisdiction such as presence, consent, domicile, and 'doing business.'" *Shakour v. Fed. Republic of Germany*, 199 F. Supp. 2d 8, 15 (E.D.N.Y. 2002) *quoting*, *Goldenberg v. Lee*, 1999 WL 390611, *2 (E.D.N.Y. Apr. 15, 1999). Accordingly, "under Section 301, a plaintiff must show that the defendant's 'continuous and systematic course of 'doing business' [in New York] ... warrant a finding of its 'presence' in the jurisdiction.'" *Shakour, quoting, Ball v. Metallurgie Hoboken– Overpelt*, 902 F.2d 194, 198 (2d Cir.1990). When, as here, a non-New York domiciled defendant has no connection to New York other than occasional travel, "personal jurisdiction in New York cannot be based on the presence . . ." *Shakour*, 199 F. Supp. 2d at 15. Furthermore, based on plaintiffs' own allegations in the FAC, there is nothing to suggest that Mrs. Gandhi "ha[d] any regular or even incidental contact with New York." *Id.*. "With plaintiff offering nothing more, the Court cannot find that it has general jurisdiction over [Mrs. Gandhi]." *Yanouskiy v. Eldorado Logistices Sys., Inc.*, 2006 WL 3050871 (E.D.N.Y. Oct. 20, 2006).

---

[2]Plaintiffs seek to confuse the jurisdictional issue by reference to non-party corporation "Indian National Overseas Congress" ("INOC") (FAC ¶ 41) - notwithstanding no allegations whatsoever providing a nexus between Mrs. Gandhi and the INOC. Even if, *arguendo*, Mrs. Gandhi was somehow associated with the New York incorporated INOC, "[t]he mere fact that a corporation is subject to jurisdiction under section 301 does not mean that individual officers may be hauled before New York courts without any showing that the individuals themselves maintained a presence or conducted business in New York. " *Family Internet, Inc. v. Cybernex, Inc.*, 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) *citing*, *Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982). *See also San Diego Cnty. Employees Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 117 (S.D.N.Y. 2010) ("[w]here an individual defendant is acting on behalf of a corporation, he does not subject himself to personal jurisdiction under § 301"); *Craig v. First Web Bill, Inc.*, 2004 WL 2700128 (E.D.N.Y. Nov. 29, 2004) ("it is clear that an officer of a corporation does not subject himself to personal jurisdiction under § 301 unless the officer was doing business in the state in his or her individual capacity").

It is therefore respectfully submitted that as there has not been service of process upon Mrs. Gandhi or compliance with the substituted service provisions of the alternative service Order, service was insufficient justifying dismissal pursuant to Fed. R. Civ. P. 12(b)(5). Moreover, as there is no basis for personal jurisdiction over Mrs. Gandhi within the State of New York, dismissal is also warranted in accordance with Fed. R. Civ. P. 12(b)(2).

**POINT II**

**THE COURT LACKS SUBJECT MATTER JURISDICTION**

- *THERE IS NO SUBJECT MATTER JURISDICTION FOR 'FOREIGN CUBED' EXTRATERRITORIAL CLAIMS UNDER ATS*

All of the plaintiffs' claims under ATS are wholly extraterritorial and accordingly must be dismissed. The entirety of the FAC consists of allegations of conduct in India, by Indian citizens, ostensibly acting with or through the government of India, allegedly causing harm to other Indian citizens, in India. The law of our land is that "the presumption against extraterritoriality applies to claims under the ATS[.]" *Kiobel v. Royal Dutch Petroleum Co.*, — U.S. —, 133 S. Ct. 1659, 1669 (2013). The *Kiobel* Court's holding was rooted in "the 'presumption that United States law governs domestically but does not rule the world.'" *Kiobel*, 133 S. Ct. at 1664 *quoting, Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007). The plaintiffs try to escape the extraterritorial bar by alleging that they have a "strong connection" to the United States. This appears to be based upon a core misapprehension of *Kiobel* which provides that there may be relief available "where the claims touch and concern the territory of the United States" (*Kiobel*, 133 S. Ct. at 1664) as *Kiobe*l further mandates that such "touch and concern" "must do so with sufficient force to displace the presumption against extraterritorial application." *Id. citing*, *Morrison v. National*

*Australia Bank Ltd.*, 561 U.S. 247 (2010). That the plaintiffs allege to love the United States (FAC ¶¶ 33-39) does not overcome the necessary presumption against extraterritoriality - critical for sovereigns to peacefully coexist in comity.

As "the ATS does not provide the federal courts of the United States with subject matter jurisdiction over torts that occur outside of the United States" (*Muntslag v. D'Ieteren, S.A.*, 2013 WL 2150686 (S.D.N.Y. May 17, 2013) *citing*, *Kiobel*, 133 S.Ct. at 1669), the plaintiffs' "First Claim for Relief," ostensibly sounding in the ATS, must be dismissed as "claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States." *Balintulo v. Daimler AG*, 727 F.3d 174, 189 (2d Cir. 2013). *See also Velez v. Sanchez,* 693 F.3d 308, 318 (2d Cir. 2012) (emphasis added).

- *"SIKHS FOR JUSTICE" IS NOT A PROPER PLAINTIFF REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)*

Plaintiffs specifically allege, in pertinent part, that "Plaintiff 'Sikhs for Justice' is a New York corporation with a principal place of business in New York County. (FAC ¶ 32). Moreover, the complaint further alleges that SFJ "was formed to seek justice and compensation" related to acts in India in 1984. *Id.*. Accordingly, on the face of the complaint, SFJ is legally barred from ever being an ATS or TVPA plaintiff, as it is not an "individual," not an "alien," and not a "legal representative." (*See also* Batra Dec. ¶¶ 9-11; Exs. 7-8).

The scope of ATS is limited to providing prospective relief in a "civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." ATS. *See e.g. Orkin v. Swiss Confederation*, 770 F. Supp. 2d 612, 617 (S.D.N.Y. 2011) *aff'd*, 444 F. App'x 469 (2d Cir. 2011). The plaintiffs rely on the definition of "Alien" contained within the

Immigration and Nationality Act, to wit: "any person not a citizen or national of the United States." (FAC ¶ 33 *citing*, 8 U.S.C. § 1101(a)(3)). Furthermore, under New York law, "[a] domestic corporation, or a foreign corporation authorized to transact business in the state, shall be deemed a resident of the county in which its principal office is located" (C.P.L.R. 503(c)), while 28 U.S.C. § 1332(c)(1) provides that a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

The plaintiffs knew this was an issue as it was addressed by Judge Sweet in dismissing an infirm complaint in SDNY, wherein Judge Sweet specifically noted that "'[a] district court lacks subject matter jurisdiction under the ATS if the plaintiff is not an alien.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d at 619 *quoting*, *Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.*, 889 F. Supp. 2d 912, 921 (S.D. Tex. 2012). Moreover, an institutional plaintiff that is a United States corporation "is not an alien and may not bring suit under the ATS." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 661 (S.D.N.Y. 2006) *aff'd*, 582 F.3d 244 (2d Cir. 2009). As SFJ is a United States Citizen, it is not within the class who can sue under ATS. Moreover, "the Supreme Court unanimously held that the term 'individual,' as used in the TVPA, 'encompasses only natural persons'" (*Sikhs for Justice v. Nath*, 893 F. Supp. 2d at 617 *citing*, *Mohamad v. Palestinian Auth.*, — U.S. —, 132 S. Ct. 1702 (2012)) and that "[o]nly a natural person can be a victim of torture or extrajudicial killing" (*Mohamad*, 132 S. Ct. at 1708). As "a corporation can neither be the victim nor the perpetrator in a TVPA case" (*Weisskopf, Inc.*, 889 F. Supp. 2d.at 924), the TVPA is limited in scope to conduct by individual people against individual people. *See also* TVPA at § 2; *In re*

*Terrorist Attacks on September 11, 2001*, 714 F.3d 118, 122 (2d Cir. 2013). As a New York corporation, SFJ is neither an "Alien" nor an "individual" and is therefore barred from relief afforded by ATS or TVPA no matter how many cases it files.

- *MOHENDER SINGH IS NOT A PROPER REPRESENTATIVE PLAINTIFF REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)*

The TVPA limits representative plaintiffs in an action alleging "extrajudicial killing" to the decedent's "legal representative, or to any person who may be a claimant in an action for wrongful death." TVPA at § 2(a)(2). The sole allegation in the FAC as to Mohender Singh's putative authority is an unadorned claim that he is "the lawful heir and next of kin" of Sardar Darshan Singh. (FAC ¶ 33). There is no allegation that Mohender Singh has ever been appointed the "legal representative" of his father's estate in any jurisdiction.

Under New York law, "[a] personal representative is a person who has received letters to administer the estate of a decedent." Est. Powers & Trusts Law § 1-2.13. Furthermore, to "be a claimant in an action for wrongful death" a person must be the decedent's "personal representative, duly appointed in this state or any other jurisdiction." *Id.* § 5-4.1(1). As Mohender Singh has not pled or established that he is the "legal representative" or has authority to be a claimant for a wrongful death action, such claims must be dismissed. *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Properties, LLC*, 435 F.3d 136, 140 (2d Cir. 2006) *quoting*, *Mingone v. State of New York*, 100 A.D.2d 897, 899 (2d Dept. 1984) ("[a] personal representative who has received letters of administration of the estate of a decedent is the only party who is authorized to bring a survival action for personal injuries sustained by the decedent . . . on account of his or her death"); *In re September 11 Litig.*, 760 F. Supp. 2d 433, 443

(S.D.N.Y. 2011) (wrongful death "plaintiff must be the duly appointed 'personal representative' of the decedent"); *Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 973 (E.D.N.Y. 1995) ("[a] claim for wrongful death can be brought only by the decedent's personal representative"). *See also* Est. Powers & Trusts Law § 11-3.2(b).

- *THE FIRST AMENDED COMPLAINT REQUIRES THAT MRS. GANDHI BE AFFORDED IMMUNITY FROM SUIT*

The plaintiffs, held to their untested FAC, allege that in 1984 Mrs. Gandhi, along with her now late husband, were heads of state in India. Specifically, plaintiffs plead that

> When Rajiv Gandhi took over the control of Congress party and the country, defendant Ms. Sonia Gandhi had been his wife of sixteen (16) years. Upon information and belief, in those sixteen years, Ms. Sonia Gandhi cemented herself as a vocal political figure well known to be a vital partner in her husband's political activities and decision making.
>
> Immediately after the death of Ms. Indira Gandhi on October 31, 1984, Rajiv and his wife, the defendant Ms. Sonia Gandhi, were the political powers.

(FAC ¶¶ 11-12). Moreover, the plaintiffs further allege that Rajiv Gandhi was "the heir apparent" to Indira Gandhi (*id.* ¶ 13) and that Mrs. Gandhi "was a full partner in her husband's decision making as President of Congress (I) and Prime Minister of the country." *Id.* ¶ 15. Indeed, the plaintiffs concede that "India is a Federal Parliamentary Republic that is headed by a Prime Minister who is an elected representative of the people." *Id.* ¶ 47. Accordingly, the plaintiffs have actively pled that Mrs. Gandhi was a head of state and government official.

While the Supreme Court has held that individual foreign government officials are not immune pursuant to the Foreign Sovereign Immunities Act (*Samantar v. Yousuf*, 560 U.S. 305, 315 (2010)), that same Court made clear that "[e]ven if a suit is not governed by the Act, it may still be barred by foreign sovereign immunity under the common law. And not every suit can

successfully be pleaded against an individual official alone." *Id.* at 324.

It has been long held that "[e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897). Accordingly, it is clear that ATS was not enacted to permit United States and its courts to "sit in judgment of the conduct of foreign officials in their own countries with respect to their own citizens." *Tel-Oren v. Libyan Arab Republic,* 726 F.2d 774, 813 (D.C. Cir. 1984) (Bork, J., *concurring*). Importantly, the federal courts of the United States

> do not look at these ATS cases from a moral perspective, but from a legal one. We do not decide what constitutes desirable government practices. We know and worry about the foreign policy implications of civil actions in federal courts against the leaders (even the former ones) of nations. And we accept that we must exercise particular caution when considering a claim that a former head of state acted unlawfully in governing his country's own citizens. 'It is one thing for American courts to enforce constitutional limits on our own State and Federal Governments' power, but quite another to consider suits under rules that would go so far as to claim a limit on the power of foreign governments over their own citizens, and to hold that a foreign government or its agent has transgressed those limits.'

*Mamani v. Berzain*, 654 F.3d 1148, 1152 (11th Cir. 2011) *quoting*, *Sosa v. Alvarez–Machain*, 542 U.S. 692, 727 (2004). The entirety of the generic allegations made about Mrs. Gandhi were, as pled by the plaintiffs, in her official capacity as a foreign leader or head of a foreign political party that ruled India in 1984 (*see* FAC ¶¶ 3, 5, 10-13, 15, 47-52, 72, 91, 101), "administered, controlled and otherwise r[an]" India's "Central Government" (*id.* ¶¶ 51-53) and "administered and controlled" the "municipal government" of "the capital city of New Delhi." *Id.* ¶¶ 54-56. "Because courts do not examine the underlying motive of actions taken by foreign officials in their official capacity, [Mrs. Gandhi] is not amenable to suit in the United States on the basis of

any of these alleged actions." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 395 (S.D.N.Y. 2009) *aff'd*, 387 F. App'x 72 (2d Cir. 2010) *citing*, *Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F.Supp.2d 277, 287–288 (S.D.N.Y. 2001).

"The TVPA does not negate head-of-state immunity." *Lafontant v. Aristide*, 844 F. Supp. 128, 138 (E.D.N.Y. 1994). Rather, "it is clear Congress intended to maintain head of state immunity to suit under the TVPA. The House Report accompanying the TVPA explicitly stated 'nothing in the TVPA overrides the doctrines of diplomatic and head of state immunity.'" *Manoharan v. Rajapaksa*, 845 F. Supp. 2d 260, 264-65 (D.D.C. 2012) *aff'd*, 711 F.3d 178 (D.C. Cir. 2013) *quoting*, H.R.Rep. No. 102–367, at 5 (1991), *reprinted in* 1992 U.S.C.C.A.N. 84, 88. Accordingly, "the TVPA applies to individual officials who fall into one of the enumerated exceptions listed in 28 U.S.C. § 1605." *Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009). As pled by the plaintiffs, Mrs. Gandhi does not fall within the immunity exceptions and remains immune.

Moreover, there is still common law immunity afforded foreign officials for actions performed pursuant to their official duties. *Samantar*, 560 U.S. at 324. *See also e.g. Matar*, 563 F.3d at 15. The entirety of the allegations made in the FAC claim that Mrs. Gandhi was performing as a leader and agent of the sovereign ruling government of India during all of the events complained of. Accordingly, based on the facts the plaintiffs themselves allege, Mrs. Gandhi is immune from suit.

- *PLAINTIFFS ARE IMPROPERLY SEEKING RELIEF AGAINST "CONGRESS(I)" BY WAY OF A SUIT WRONGLY BROUGHT AGAINST MRS. GANDHI*

Claims under ATS may only be brought against individuals and not against entities, like the INC. A putative claim for relief under ATS against an entity "must be dismissed for lack of

subject matter jurisdiction." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 145 (2d Cir. 2010) *aff'd*, — U.S. —, 133 S. Ct. 1659 (2013). Moreover, the same is true of the TVPA as the Supreme Court firmly held in *Mohamad*, *supra*.[3] The plaintiffs had to have known this when bringing this action, which shows their lack of good faith, as they already experienced a dismissal under *Mohamad* in the SDNY. *Sikhs for Justice v. Nath*, 893 F. Supp. 2d at 617-618 ("the INC, as an organization and not a natural person, cannot be held liable under the TVPA").[4]

That the plaintiffs are treating Mrs. Gandhi as "Congress(I)" is apparent from the face of the pleading. Notwithstanding that by virtue of Judge Sweet's decision the plaintiffs were actually aware of the fatal infirmities that a claim against the INC suffered, at the time this subsequent action was commenced Mrs. Gandhi was only named in her capacity as President of the INC. Accordingly, the suit was solely against the INC while plaintiffs sought to avoid the prohibitions against institutional suits. The existence of the infirmity was addressed at the Rule 16 conference and the FAC, seeking to avoid the jurisdictional bar, adds a single unadorned allegation that Mrs. Gandhi was now "being sued in her personal capacity as well as in her capacity as President of Congress (I)." (FAC ¶ 2).

- *THE STATUTE OF LIMITATIONS HAS EXPIRED AND THERE IS NO BASIS FOR EQUITABLE TOLLING*

The TVPA provides a generous, but strict, statute of limitations such that "[n]o action

---

[3] The lack of corporate liability under the TVPA has long been noted in the Eastern District of New York. *See e.g. Friedman v. Bayer Corp.*, 1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999) ("This statute has been held to apply to individual defendants but not to corporations").

[4] All of the plaintiffs named in the instant action are included amongst the plaintiffs named in the SDNY matter styled *Sikhs for Justice v. Nath* (*Sikhs for Justice v. Indian National Congress Party a/k/a "CONGRESS (I),"* 10 CV 2940 (RWS)) (*see* Batra Dec. Exs. 7-8).

shall be maintained under this section unless it is commenced within 10 years after the cause of action arose." TVPA § 2(c). Furthermore, that same 10 year limitation is applied to ATS claims. *Jesner v. Arab Bank, PLC*, 2009 WL 4663865 (E.D.N.Y. May 1, 2009); *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 346 (W.D.N.Y. 2006); *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 386 (E.D.N.Y. 2002).

As pled, the alleged "cause[s] of action" arose between November 1-4, 1984. (FAC ¶ 126). Nearly 3 decades have passed since the events complained of, and nearly 2 decades have elapsed since the statute of limitations expired in November 1994. The plaintiffs seek to escape this fatal defect in their claims by urging that "equitable tolling" applies to the statute of limitations (FAC ¶¶ 127-138) and by suggesting further recent activity should somehow revive these long expired claims (*see e.g. Id.* ¶¶ 3-9). However, this generically alleged conduct, albeit recent, does not constitute "torture," "extrajudicial killing" or a violation of the law of nations. Accordingly, the recency does nothing to invoke the jurisdiction of the federal courts, nor would it relate back for decades of elapsed time.

"Equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (*internal quotation marks omitted*). "Equitable tolling, however, 'is a rare remedy to be applied in unusual circumstances'" *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 316 (E.D.N.Y. 2008) *quoting*, *Wallace v. Kato*, 549 U.S. 384, 396 (2007). Accordingly, "[a] plaintiff seeking equitable tolling 'must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances "beyond his control" prevented successful filing during that time.'"

*Joseph S.*, *supra*, *quoting*, *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001).

While equitable tolling has been applied in some TVPA and ATS cases, it is only when there are "extraordinary circumstances outside of plaintiffs' control, which made it impossible for plaintiffs to assert their claims in a timely manner." *Chavez v. Carranza*, 559 F.3d 486, 494 (6th Cir. 2009).[5] This is not the case here, as, on the face of the pleading there were avenues for relief in India, the plaintiffs have long known of the basis for their claims, and the plaintiffs have been in the United States for years as the plaintiffs allege that Jasbir Singh left India in 2002 (*id.* ¶ 93) while Mohender Singh left in 2008. *Id.* ¶ 99. Indeed, the FAC makes no plausible allegations warranting equitable tolling. Acordingly, equitable tolling does not apply in this ATS and TVPA case. *See Ellul v. Congregation of Christian Bros*., 2011 WL 1085325, *4 (S.D.N.Y. Mar. 23, 2011) *citing*, *Deutsch v. Turner Corp*., 324 F.3d 692, 718 (9th Cir. 2003); *Van Tu v. Koster*, 364 F.3d 1196, 1200 (10th Cir. 2004).

Yet, barring any tolling, the FAC alleges "[i]t has been in her role as Congress (I) president since 1998 that Sonia Ghandi has successfully protected the perpetrators and shielded them from the judicial system but also has been involved in a campaign of rewarding those who were active participants." FAC ¶ 141 (emphasis added). Moreover, the FAC further avers that Mrs. Gandhi "has continued since 1998 to protect, shield and promote" persons "who committed

---

[5]This issue was not yet determined with finality in the SDNY matter because, on the first amended complaint, "questions of jurisdiction have not yet been resolved and remain open, the Court will reserve judgment on the question of whether the Plaintiffs' claims are barred under the statute of limitations and whether equitable tolling is applicable until a later stage in this case, should the case move forward." *Sikhs for Justice*, 893 F. Supp. 2d at 628. Nevertheless, Judge Sweet did specifically recognize that "[h]ere, all of the alleged events in the FAC occurred in November 1984, and thus fall outside of the 10 year statutes of limitations. The INC is correct that in general, claims arising under the TVPA and ATS must be filed within 10 years of the triggering event." *Id*...

the Sikh Genocide of 1984." *Id.* ¶ 270 (emphasis added). While the plaintiffs claim that somehow Mrs. Gandhi's role as President of the INC has empowered her to shield Indian nationals from scrutiny for their alleged acts in 1984, they simultaneously allege that such "power" did not exist until 14 years after the 1984 events complained of. Accordingly, as pled by the plaintiffs, the statute of limitations expired 4 years prior to Mrs. Gandhi becoming President of the INC and allegedly obtaining the "power" they allege enabled a "cover up." Therefore, on the face of the complaint, the statute of limitations has expired and there is no equitable toll to same.

Additionally, while the plaintiffs pled that India has been in the control of the Gandhi family since 1947 (*id.* ¶ 10) and that "Congress (I) has been effectively in control in India since at least 1984" (*id.* ¶ 136), these false claims are belied by history, including as recorded by the governments of the United States and the Republic of India. Specifically, based upon records certified by the Indian Prime Minister's Office, the leadership of India was not with "Congress (I)" from May 16, 1996 through May 22, 2004 (Batra Dec. ¶ 7; Ex. 5). Moreover, in 2000, the State Department reported that there was

> ongoing transition in Indian politics away from the historically dominant and national based Congress Party toward smaller, narrower-based regional parties. This process has been underway throughout much of the past decade and is likely to continue in the future.
>
> *****
>
> The Congress (I) Party, led by Sonia Gandhi (widow of the late Prime Minister Rajiv Gandhi), holds the second-largest number of seats in the Lok Sabha. Priding itself as a secular, centrist party, the Congress has been the historically dominant political party in India. Its performance in national elections has steadily declined during the last decade. . . The political fortunes of the Congress have suffered badly as major groups in its traditional vote bank have been lost to emerging regional and caste-based parties. . .

United States Department of State, Background Notes: India, Washington GPO, 2000 (Batra Dec.

Ex. 3). Moreover, as reported by the Department of State in November 2004, "Congress (I)" was unable to return to power on its own, had to align with smaller regional parties and even with the coalition it needed, "Congress (I)"'s victory in 2004 was a "surprise." (Batra Dec. Ex.4).

Furthermore, the plaintiffs have not established that they exhausted all available remedies in India. While Congress made this a jurisdictional prerequisite (TVPA § 2(b)), the plaintiffs have merely made boilerplate unadorned claims that they "have no adequate or available remedies in India" (FAC ¶ 134) and that "the Government of India has failed, neglected and refused to properly investigate the incidents of November 1984." *Id.* ¶ 129. These false claims implode based on the plaintiffs' own reliance on the "Nanavati Commision (*sic*) of Inquiry which was presided over my (*sic*) former Indian Supreme Court Justice G.T. Nanavati." *Id.* ¶ 142; *see also* ¶ 145.[6] After an exhaustive investigation, the Nanavati Commission (which was not the first Commission established by the Indian government to investigate the 1984 riots)[7] issued its report

---

[6]The Nanavati Commission report is publically available on the internet from the Indian Ministry of Home Affairs. *Justice Nanavati Commission of Inquiry* (Sept. 2, 2005), http://mha.nic.in /hindi/sites/upload_files/mhahindi/files/pdf/Nanavati-I_eng.pdf, *last accessed* December 19, 2013. Plaintiff SFJ itself also provides access to this report on its own website. *See* http://www.sikhsforjustice.org/?q=content/nanavati-commission-feb-2005, *last accessed*, December 19, 2013.

In determining a motion to dismiss in accordance with Fed. R. Civ. P. 12(b)(6) the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference [ ] and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Because plaintiff referenced the Nanavati Commission report in its amended pleading, and clearly knew of same as it has made it available on its own website, it may be considered on this 12(b)(6) motion. *See also Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 314, 329 (E.D.N.Y. 2013) *quoting, Brass v. Am. Film Technologies, Inc*., 987 F.2d 142, 150 (2d Cir.1993) (*citing, Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47-48 (2d Cir.1991)).

[7]Prior to the Nanavati Commission, there were at least 9 other Commissions authorized by Indian government entities to perform functions related to the 1984 riots: 1. Marwah Commission (November 1984); 2. Misra Commission of Enquiry (May 1985); 3. Kapur Mittal Committee (February 1987); 4. Jain Banerjee Committee (February 1987); 5. Potti Rosha Committee (March

which contains not a single mention of Mrs. Gandhi (Batra Dec. Ex. 6). Moreover, as regards her late husband, Rajiv Gandhi and the leadership of "Congress (I)" the Commission found, in pertinent part, that

> [t]he evidence on the other hand suggest that Shri Rajiv Gandhi had showed much concern about what was happening in Delhi. He had issued an appeal for remaining calm and maintaining communal harmony. In view of the complaints received by him that people were not able to contact the police on telephone No. 100, he had immediately called some police officers and told them to take immediate action so that anyone who wanted to contact the police could do so. He had even visited the affected areas on the night of 1-11-84. There is absolutely no evidence suggesting that Shri Rajiv Gandhi or any other high ranking Congress(I) leader had suggested or organized attacks on Sikhs. Whatever acts were done, were done by the local Congress(I) leaders and workers, and they appear to have done so for their personal political reasons. . .

*Id., Justice Nanavati Commission of Inquiry* at p. 182. Thus, far from inciting the riots, it was Prime Minister Rajiv Gandhi who sought to calm the people. Accordingly, based on the very report the plaintiffs rely on, there is no nexus to Mrs. Gandhi and her husband, then the Prime Minister, who sought only peace.[8] This Commission report, <u>relied on by the plaintiffs</u>, is fatal to their claims as it specifically concluded that responsibility for the 1984 riots they complain of does <u>not</u> lie with "Rajiv Gandhi or any other high ranking Congress (I) leader[.]" *Id.*.

---

1990); 6. Jain Aggarwal Committee (December 1990); 7. Ahuja Committee (February 1987); 8. Dhillon Committee (1985); 9. Narula Committee (December 1993).

[8]In addition to the plaintiffs reliance on the Nanavati Commission report, its findings are also admissible as public records. Fed. R. Evid. 803(8). That the Nanavati Commission was implemented by a foreign government is of no moment as "[t]he public records exception is applicable to reports of '"foreign public offices and agencies that otherwise come within its terms."'" *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 578 (E.D.N.Y. 2013) *quoting*, *In re Vitamin C Antitrust Litigation*, 2012 WL 4511308, *1 (E.D.N.Y. Oct. 1, 2012) (*quoting*, *In re Parmalat Sec. Litig.*, 477 F.Supp.2d 637, 640 (S.D.N.Y. 2007)).

The Nanavati Commission report further puts the lie to plaintiffs' claim of no remedies in India. (FAC ¶ 134). Contrary to their false allegation, the report notes that certain High Courts in India had directed Indian states to pay established amounts to victims of the riots - and that such amounts were paid. *Justice Nanavati Commission of Inquiry* at p. 183.[9]

**POINT III**

**THE AMENDED COMPLAINT FAILS TO STATE A CLAIM**

The FAC, while taking great license from the complaint previously dismissed in the SDNY, fails to plausibly allege any acts by Mrs. Gandhi that would give rise to relief. To the contrary, in sweeping and conclusory allegations about happenings in India in 1984 the plaintiffs fail to attribute a single actual act or omission to Mrs. Gandhi. (FAC ¶¶ 68-126). Clearly,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Given plaintiffs' repeated pleading failures, the FAC must now be dismissed with prejudice.

The FAC generically alleges that "[d]ifferent leaders of Congress (I) took the responsibility to carry out and make possible the attacks on Sikhs in their respective areas of

---

[9]This is somewhat analogous to the restitution the United States Congress directed be paid to United States citizens of Japanese ancestry who were interned during World War II. *See e.g.* 50 App. U.S.C. § § 1981, *et. seq.*, 1989, *et. seq.*.

influence" (FAC ¶ 106), but then while providing blanket claims of non-specific wrongdoing by non-parties and unidentified persons (*id.* ¶¶ 106-125), the FAC in no way delineates any involvement by Mrs. Gandhi in the acts alleged. Moreover, the official findings of the Nanavati Commission concluded that the entire premise of the plaintiffs' complaint, as regards Mr. Rajiv and Mrs. Sonia Gandhi and "Congress (I)" is wrong. *See Justice Nanavati Commission of Inquiry* at pp. 182-183.

As pled, the only named individual involved in any alleged wrongdoing associated with plaintiff Jasbir Singh is "Congress (I) leader Bhola Ram." (FAC ¶ 93). Additionally, Jasbir Singh further alleges overhearing statements by "Congress (I) official and Member of Parliament Jagdish Tytler." *Id.*. The description of conduct directed to or even remotely touching Jasbir Singh is devoid of reference to Mrs. Gandhi. To the contrary, while at some unspecified time Jasbir Singh generically asserts being "threatened by Congress (I) party leaders and workers[,]" " detained and tortured by local police on several occasions at the request of Congress (I) leaders" and "abducted and tortured" at the behest of "Congress (I) leader Jagdish Tytler" ostensibly " for submitting an affidavit to authorities regarding the former's actions on November 1, 1984" (*id.*), all of these allegations have no association with Mrs. Gandhi and lack necessary plausible factual specificity.

Furthermore, as for actual harm that Jasbir Singh alleges to have individually suffered, it boils down to him allegedly "escap[ing] an attempt on his life by running, hiding and cutting his hair to remove any evidence of his Sikh identity." *Id.*. Even if true, this does not constitute "torture," "extrajudicial killing" or any other violation of the Law of Nations. Thereafter, without identifying any actors, and with zero link to Mrs. Gandhi, Jasbir Singh nakedly alleges "severe

physical injuries and severe mental and emotional pain and suffering sustained by him as a result of the assault, attempted extrajudicial killing and torture at the hands of the defendants . . .” *Id.* (when Mrs. Gandhi is the only defendant).

Similarly, as regards plaintiff Mohender Singh, and his late father Sardar Darshan Singh, the FAC also fails to state a claim against Mrs. Gandhi. Rather, the FAC claims that there was an attack on Mohender Singh’s family on November 1, 1984 that “Congress (I) leader and Member of Parliament HKL Bhagat organized, armed and led” (FAC ¶ 96). Moreover, according to the plaintiffs, this alleged attack was carried out by “Kishori, Mohammad Abbas, Dr. Zulfqar Kashaf (a/k/a "Lamboo") and Rampal Saroj.” *Id.*. Nowhere does Mrs. Gandhi come into this calculus. The complaint further alleges that Sardar Darshan Singh was beaten, stabbed to death and dismembered “[o]n the command of HKL Bhagat and other Congress (I) leaders present.” *Id.* ¶¶ 97-98. Again, the painful FAC is devoid of reference to any involvement by Mrs. Gandhi - let alone plausible involvement.

As for Mohender Singh himself, the amended pleading alleges only that the “group” which was allegedly “organized, armed and led” by “HKL Bhagat” “searched for Mohender Singh attempting to kill him and any other children they found.” *Id.* ¶ 97. While this allegation does not constitute “torture,” “extrajudicial killing” or any other violation of the Law of Nations as pertains to Mohender Singh, it also fails to attribute any conduct to Mrs. Gandhi. Furthermore, the complaint alleges that Mohender Singh suffered “severe physical injuries and severe mental and emotional pain and suffering” as well as “economic damages [ ] as a result of the loss of his father” (*id.* ¶ 99) - but he makes no attempt to delineate the causation of such alleged physical and emotional injuries, or to identify the alleged “economic damages.”

The FAC contains no description, whatsoever, of what Jasbir Singh alleges constituted "torture," who performed the alleged "torture," when and where the alleged "torture" occurred and what "injuries" were caused by the claimed "torture." *See Zapolski v. Fed. Republic of Germany*, 2010 WL 1816327 (E.D.N.Y. May 4, 2010) *aff'd*, 425 F. App'x 5 (2d Cir. 2011) *citing*, *Mohammad v. Bin Tarraf*, 300 Fed. App'x. 87 (2d Cir.2008) (dismissing a pleading that did not describe the alleged acts of torture as "legally insufficient"). Rather, the amended pleading merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action [which] will not do.'" *Shan v. China Const. Bank Corp*., 2010 WL 2595095 (S.D.N.Y. June 28, 2010) *aff'd*, 421 F. App'x 89 (2d Cir. 2011) *quoting*, *Iqbal*, 556 U.S. at 678 (*quoting*, *Twombly*, 550 U.S. at 555). *See also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) *quoting*, *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir.2002) ("'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss").

The instant plaintiffs were firmly alerted to the fact that "allegations in a complaint must be complete enough to enable a reader to understand how each defendant was personally involved in the wrongdoing plaintiff is alleging." *Sikhs for Justice*, 893 F. Supp. 2d at 616 *citing*, *Onwuka v. NYC Taxi Limousine Comm'n*, 2012 WL 34090, at *4–5 (E.D.N.Y. Jan. 6, 2012). It is for this reason that where, as here, the complaint "'contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Sikhs for Justice, id.. quoting*, *Dove v. Fordham Univ*., 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) (*quoting, Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y.1981)).

After being given an opportunity to fine tune their complaint during the Rule 16 Conference, the plaintiffs have still not identified a single act by Mrs. Gandhi that they allege was directed at them or caused them harm. Moreover, while the FAC baldly alleges, in a conclusory manner, that "[u]pon information and belief" Mr. and Mrs. Gandhi "ordered killings, torture, rape and intimidation of Sikh population throughout the country" (FAC ¶ 13), there is not a shred of plausible factual allegations as to what such "orders" specifically were, how such "orders" were allegedly given, who was allegedly "ordered" to act, how they were allegedly "ordered" to act, when and how the alleged "orders were carried out, and how the plaintiffs were directly impacted by such alleged "orders."

Here, plaintiffs also generically claim that Mrs. Gandhi "conspired" with (*id.* ¶¶ 1, 29, 40, 105) and "aided and abetted" (*id.* ¶ 1, 27, 29, 40, 72, 169) others; however, such "[b]road allegations of conspiracy are insufficient; the plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) *quoting*, *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). Indeed, "[t]o state a claim for aiding and abetting under international law, a plaintiff must allege that defendant (1) provided 'substantial assistance' to the perpetrator; and (2) acted with the 'purpose' of facilitating the alleged offenses, rather than with mere knowledge." *Liu Bo Shan v. China Const. Bank Corp.*, 421 F. App'x 89, 93 (2d Cir. 2011) *quoting*, *Presbyterian Church Of Sudan*, 582 F.3d at 247. Moreover, any "conspiracy" under international law would require a "joint criminal enterprise" and therefore "plaintiffs' conspiracy claims would require the same proof of mens rea as their claims for aiding and abetting." *Id.* at 260. The FAC provides no insight as to any agreement or any overt acts in

furtherance of any conspiracy, nor does it provide any basis to plausibly conclude that Mrs. Gandhi aided and abetted anyone - but it does improperly scandalize.

The plaintiffs also make unadorned assertions that Mrs. Gandhi exercised "command responsibility" over attacks in India in 1984 (FAC ¶¶ 1, 40, 270). Nowhere in the FAC is it alleged how such "command responsibility" plausibly existed or was implemented. To the contrary, notwithstanding that "command responsibility" is a military doctrine (*see e.g. Giraldo v. Drummond Co., Inc.*, 2013 WL 3873965 (N.D. Ala. July 25, 2013)), the plaintiffs self-destructively pled that "[t]he President is also the commander-in-chief of the armed forces of India." *Id.* ¶ 190. While the FAC equates Mrs. Gandhi with Prime Minister (*id.* ¶¶ 11-13, 15, 47), it does not allege that she acted as President and thus "commander in chief." Nor does the FAC specifically and plausibly allege any command that Mrs. Gandhi allegedly issued that resulted in any harm to any plaintiff, <u>ever</u>.

**POINT IV**

**THE BULK OF THE AMENDED COMPLAINT OUGHT BE STRICKEN**

Much of the FAC falls within the category of "redundant, immaterial, impertinent, or scandalous" matter that has no place in a pleading. Fed. R. Civ. P. 12(f)(2). This includes irrelevant and scandalous allegations references to "mass graves" (FAC ¶¶ 16-17, 137); impertinent, scandalous claims of actions as President of "Congress (I)" after Mrs. Gandhi attained that position, in 1998, 14 years after the events complained of and 4 years after the expiration of the Statute of Limitations (*id.* ¶¶ 26, 40, 51, 135, 141, 143-144, 146, 151, 154, 156-157, 159, 162-163, 169, 174-179, 181-183, 186-188, 196-197, 199-200, 203-208, 212, 214-215, 217-218, 221-225, 227-231, 233, 235-239, 241-244, 246, 249-251, 253-255, 264, 266-272, 274-

277); irrelevant and scandalous allegations referring to "Congress (I)" and its alleged members, as if they were defendants in these proceedings (*id.* ¶¶ 28, 41, 56, 67-69, 72-91, 100-101, 103, 106, 108-109, 112, 116, 120-122, 126, 135-137, 142, 145, 148-189, 198-201, 209-264, 266-269, 271, 274-275); irrelevant and scandalous allegations regarding the Indian government and its political system (*id.* ¶¶ 47-55, 59-60, 109, 123-124, 139-140, 160-189, 190-203, 206-207, 209-264); and, irrelevant and scandalous allegations about wrongdoing attributed to no one. *Id.* ¶¶ 107, 114-115, 118-119, 132-133.

The allegations that must be stricken are not pertinent to any valid claim for relief. Rather, they are a hodgepodge of grotesque conclusory claims that beyond their falsity, they have no relevance to the claims made. On the face of the complaint, the named plaintiffs have not sustained harm as a result of anything attributed to Mrs. Gandhi, or as a result of the bulk of the inflammatory claims made throughout the FAC. These abrasive allegations are not simply irrelevant to any valid, timely and meritorious claim, they are also highly prejudicial to Mrs. Gandhi. "[A]llegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *G-I Holdings, Inc. v. Baron & Budd*, 238 F.Supp.2d 521, 555 (S.D.N.Y. 2002) *citing*, *Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691, *16 (S.D.N.Y. February 7, 1995). This is because "[i]n addition to the lack of relevance of the allegations, they are also prejudicial. They are amorphous, unspecific and cannot be defended against. Further, the allegations, which have been publicized, harm [Mrs. Gandhi] in the public eye and could influence prospective jury members." *G-I Holdings, Inc.,* 238 F. Supp.2d at 555-556. Accordingly, a strike of same is warranted. *See also Grimes v. Fremont General Corp.*, F. Supp.2d 584, 595 (S.D.N.Y. 2013).

## POINT V

## SIKHS FOR JUSTICE SHOULD BE ENJOINED FROM FURTHER LITIGATION

An injunction ought to issue barring SFJ from starting any further lawsuits pertaining to events in India after the assassination of then Prime Minister Indira Gandhi. As has been documented herein, SFJ has repeatedly accessed the federal courts, in numerous judicial districts, in an effort to secure the same relief - notwithstanding they are not entitled to it and they have no standing. (Batra Dcc. ¶¶ 9-11; Exs. 7-8). Nothing can changc thc fact that thcy arc now and havc always been a "United States citizen," who is an entity and not an "individual." And, nothing can change the fact that the entirety of the events they complain of are extraterritorial, without "touching and concerning the United States" and thus beyond the reach of the ATS and TVPA.

SFJ's repeated and vexatious litigation onslaught against Indian persons and officials is unwelcome and wholly improper and invites the Third Branch to damage the foreign relations of the United States - the management of which is exclusively entrusted to the Legislative and Executive Branches. *See e.g.* U.S. Const. Art. II, § 2, cl. 2; *Kiobel*, 133 S. Ct. at 1664; *Sosa*, 542 U.S. at 727. Where, as here,

> [t]he prolix and redundant pleadings make conclusory reference to a multitude of causes of action against multiple defendants as part of a vaguely defined [ ] conspiracy which have caused the defendants to repeatedly incur unreasonable expenses in the defense of these unfounded allegations and have imposed upon the courts an undue burden and abuse of the judicial process. Finally, it is apparent that other sanctions will not deter plaintiffs from further vexatious and baseless litigation as plaintiffs have repeatedly demonstrated their unwillingness to accept unfavorable rulings by repackaging their claims with different labels against new (and prior) defendants and in new courts as part of a broadening conspiracy theory to relitigate previously rejected claims. Thus, although injunctive relief is an extraordinary remedy, the undersigned finds it is warranted in this case.

*Niles v. Wilshire Inv. Group, LLC*, 859 F.Supp.2d 308 (E.D.N.Y. 2012). Additionally, as it is clear that SFJ now has (1) a history of duplicative vexatious litigation; (2) motivated solely to harass Indian leaders and officials with no valid claims that can be pursued in the United States Courts; (3) with counsel at the helm of the organization (Gurpatwant Singh Pannun, Esq. - "Legal Advisor, Sikhs For Justice") repeatedly pursuing their claims in Court; (4) causing extensive expense in legal fees and imposing a needless and unwarranted burden on multiple courts, federal judges and court personnel; and, (5) an anti-suit injunction would be the best means to protect the judiciary and other parties, such an injunction is properly issued. *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23-25 (2d Cir. 1986). *See also Malcolm v. Board of Educ. of Honeoye Falls-Lima Cent. School Dist.*, 506 Fed. Appx. 65, 69-70 (2d Cir. 2012).

**POINT VI**

**IF NOT DISMISSED, THIS MATTER OUGHT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a)**

The relatedness and near identity of issues is clear from the face of the pleadings in this action (FAC) and the SDNY matter (Batra Dec. Exs. 7-8). It is respectfully submitted that SFJ commenced this action in a different judicial district in an improper exercise of "judge shopping" and "forum shopping." It did not like what was happening in the SDNY, so now it is trying to bring near identical claims in the EDNY. "While a plaintiff is generally entitled to deference in [its] choice of forum, here, plaintiff's choice of forum is given little, if any, deference because plaintiff does not reside in the chosen forum and there is evidence of forum shopping by plaintiff." *Levy v. Welsh*, 2013 WL 1149152, *6 (E.D.N.Y. Mar. 19, 2013).

Here, the SDNY already has an action pending revolving the same 1984 incidents complained of. Moreover, the lead plaintiff, SFJ, is a New York County domiciled company and accordingly is "home" in the SDNY - while no parties to this action reside in the EDNY. Furthermore, the SDNY action has been pending since 2010. Where, as here, the factual predicate in two actions is identical, transfer is appropriate especially given that "the interests of justice, however, 'require that the cases be related, not identical.'" *Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 550 (E.D.N.Y. 2012) *quoting*, *Columbia Pictures Indus. v. Fung*, 447 F.Supp.2d 306, 309-310 (S.D.N.Y.2006). As there has already been consideration of the allegations made by SFJ regarding allegations of events in India in 1984, as well as rulings by Judge Sweet in the SDNY "[d]enial of transfer would result in duplicative actions in which two federal judges would preside over the same basic claim, wasting judicial resources, requiring the parties to unnecessarily expend more time and expense, and risking potentially inconsistent results. This is clearly not desirable here." *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 131 (E.D.N.Y. 2004) *citing, Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). Accordingly, if this matter is not entirely dismissed, as it ought to be, then any remaining claims ought be transferred to the SDNY pursuant to 28 U.S.C. § 1404(a).

**WHEREFORE,** it is respectfully requested that Mrs. Gandhi's within motion be granted in its entirety, along with all additional related relief that will un-do the injury to the Constitutional authority of the Executive Branch over the foreign relations of the United States.

Respectfully submitted,
The Law Firm of Ravi Batra, P.C.

Ravi Batra (RB 4299)

*Of Counsel*:
Ravi Batra (RB 4299)
Todd B. Sherman (TS 4031)
*On the brief*