**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

SIKHS FOR JUSTICE INC (SFJ), et al., :

**Plaintiffs** :

- against - :

Ms. Sonia Gandhi, :

a citizen of India, President :
Indian National Congress , :
a/k/a, "CONGRESS (I)" :

**Defendant** : Case No. 13-cv -4920

------------------------------------------------------------ X

**PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SONIA GANDHI'S MOTION TO DISMISS**

GULJIT KAUR BAINS
Attorney for the Plaintiffs
Ali & Bains PC
118-35 Queens Blvd, Suite 1700
Forest Hill, NY 11375
T: 718-544-8000 F:718-480-1244
gbains@alibainsfirm.com

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... 4-5

INTRODUCTION .......... 6

FACTUAL BACKGROUND .......... 6

DEFENDANT'S MOTION SHOULD BE DENIED IN ITS ENTIRETY .......... 9

POINT I DEFENDANT WAS PROPERLY SERVED AND HAS FAILED TO REBUT THAT SHE HAS NOT BEEN PROPERLY SERVED .......... 10

A. PLAINTIFF'S SERVICE OF PROCESS WAS PROPER .......... 11

B. THE COURT SHOULD HOLD A HEARING OR ALLOW LIMITED JURISDICTIONAL DISCOVERY ON THE ISSUE OF PERSONAL JURISDICTION AND DEFENDANT'S PRESENCE IN NEW YORK .......... 14

C. DEFENDANT'S CLAIM OF LACKS GENERAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE IS REDUNDANT DUE TO A) COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT BY VIRTUE OF PERSONAL SERVICE ON THE DEFENDANT; (B) THE DEFENDANT HAS UTTERLY FAILED TO ALLEGE THAT SHE HAS NO CONTACTS WITH THE FORUM STATE .......... 16

POINT II THE COURT HAS SUBJECT MATTER JURISDICTION .......... 17

A. THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THE INSTANT CASE FALLS WITHIN THE EXCEPTION PROVIDED BY THE SUPREME COURT IN *KIOBEL V. ROYAL DUTCH PETROLEUM CO.*, --U.S.--, 133 S. CT. 1659 (2013) .......... 17

B. "SIKHS FOR JUSTICE" IS A PROPER PLAINTIFF AS IT HAS ASSOCIATIONAL STANDING ............. 25

C. MOHENDER SINGH IS A PROPER PLAINTIFF ............. 26

D. DEFENDANT MS. GANDHI IS NOT ENTITLED TO IMMUNITY ... 26

E. PLANTIFFS ARE PROPERLY SEEKING RELIEF AGAINST MS. GANDHI, AN INDIVIDUAL AND EVEN OTHERWISE ANY CLAIM AGAINST "CONGRESS-I" WOULD BE PROPER UNDER ATS AS IT DOES NOT BAR RELIEF AGAINST ENTITIES. ......................... 29

F. THE PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS AND IN THE ALTERNATIVE PLAINTIFFS HAVE A STRONG BASIS FOR EQUITABLE TOLLING ............ 30

POINT III THE AMENDED COMPLAINT PROPERLY STATES A CLAIM ................ 30

POINT IV NO PART OF THE AMENDED COMPLAINT WARRANTS TO BE STRICKEN ................. 32

POINT V DEFENDANT'S REQUEST TO ENJOIN PLAINTIFF "SIKHS FOR JUSTICE" FROM FILING ANY FURTHER SUITS RELATING TO NOVEMBER 1984 MASSACRE IS YET ANOTHER ATTEMPT BY THE DEFENDANT TO COVER UP HER AND HER PARTY'S CRIMES COMMITTED AGAINST INNOCENT SIKHS IN NOVEMBER 1984 AND ONWARDS ............................ 33

POINT VI VENUE IN THIS CASE IS PROPER AND TRANSFER OF THIS MATTER TO THE SOUTHERN DISTRICT OF NEW YORK WOULD BE IMPROPER AS THE DEFENDANTS IN THE CASE BEFORE THE SOUTHERN DISTRICT ARE DIFFERENT ........ 34

CONCLUSION ................................................ 34

**TABLE OF AUTHORITIES**


A.T. Brod & Co. v. Perlow, C.A.2 (N.Y.) 1967, 375 F.2d 393 ........................

Burnham v. Superior Court of California,
1990, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 ........................

Butler v. Capitol Federal Sav., D.Kan.1995, 904 F.Supp. ........................

C. I. T. Financial Corp. v. Sachs, S.D.N.Y.1950, 10 F.R.D. 397 ........................

Doe I v. Exxon Mobil Corp., 393 F.Supp.2d 20, 24, 28 (D.D.C.2005) ................

Bogan v. Scott-Harris, 523 U.S. 44, 54-56 (1998), ........................

Burnett v. Al Baraka Inv. & Dev. Corp.,
274 F.Supp.2d 86, 99–100 (D.D.C.2003)). ........................

Frieri v. City of Chicago, N.D.Ill.2001, 127 F.Supp.2d 992 ........................

Freeman v. Godinez, N.D.Ill.1998, 996 F.Supp. 822, ........................

Filartiga v. Pena–Irala, 630 F.2d 876, 890 (C.A.2 1980) ........................

Friends of the Earth, 528 U.S. at 181, ........................

Hunt v. Washington State Apple Advertising Comm'n,
432 U.S. 333, 343 (1977). ........................

Jennings v. University of North Carolina at Chapel Hill,
M.D.N.C.2002, 240 F.Supp.2d 492 ........................

International Controls,593 F.2d 166 (2d Cir.) ........................

Int'l Controls Corp. v. Vesco, 593 F.2d 166, 176-78 (2d Cir. 1979) ................

International Controls Corp. v. Vesco, 593 F.2d 166, 176 (2d Cir. 1979) ................

International Shoe Co. v. Washington,
1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 ...........................

Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir.1996) ...........................

Kiobel v. Royal Dutch Petroleum Co., --U.S.--, 133 S. Ct. 1659 (2013). ..................

Levin v. Ruby Trading Corp., 248 F.Supp. 537, 541-44 (S.D.N.Y. 1965) ..................

Levin v. Ruby Trading Corporation, 248 F. Supp. 537 (SD NY 1965) ..................

Mullane v. Cent. Hanover Bank & Trust Co., 339
U.S. S.Ct. 652, 94 L. Ed. 865 (1950)) ...........................

Mwani v. Bin Ladin, Civil Action No. 99–125, 2006
WL 3422208, (D.D.C. Sept. 28, 2006) ...........................

North American v. Mifsud, ___Misc. 3d ___, Index No. 16400/98
(Nassau Co. Aug. 4, 2007)(Engel, J.S.C.) ...........................

Pennoyer v. Neff, 1877, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 ...........................

Pennoyer v. Neff, 1877, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 ...........................

Rawstorne v. Maguire, 1934, 265 N.Y. 204, 207, 192 N.E. 294, 295, ..................

Samantar v. Yousef, 130 S.Ct. 2278 (2010) ...........................

State Employees Bargaining Agent Coalition v. Rowland,
494 F.3d 71, 89 (2d Cir. 2007) ...........................

SEC v. Tome, 833 F.2d 1086, 1094 (2d Cir. 1987) ...........................

United Shoe Machinery Corporation v. Becker,
E.D.N.Y.1943, 51 F.Supp. 802. ...........................

## INTRODUCTION

Plaintiffs, on behalf of themselves, their deceased family members and all others similarly situated (collectively "plaintiffs"), respectfully submit this memorandum of law in opposition to defendant Sonia Gandhi's (hereinafter "defendant" or "Ms. Gandhi") motion to dismiss filed pursuant to Rule 12 (b)(1), (2) and (5), Fed. R. Civ. P. Plaintiffs also submit this memorandum of law in support of their request for a "Hearing" and request for discovery on issues relating to service and personal jurisdiction, if necessary.

## FACTUAL BACKGROUND

As alleged in the First Amended Complaint, on or about August 15th 2013, a group of Congress (I) workers, the political party headed and controlled by the Defendant, attacked Tilak Vihar, a New Delhi colony inhabited by the survivors, mostly widows, of the November 1984 Sikh Genocide. Upon information and belief, this attack was carried out by the Congress (I) workers on the orders of defendant Ms. Sonia Gandhi, who at the relevant time was the head of Congress (I).

Upon information and belief, the intention of the said attack was to harm and intimidate the plaintiffs and witnesses from pursuing any legal recourse against defendant and her party leaders for their role in the killing of Sikhs during the November 1984 riots and their violent aftermath.

Upon information and belief, the said attack was carried out on the orders of Ms. Sonia Gandhi in order to protect and shield the members, office bearers, leaders and supporters of the defendant's party of which she was and is the head, who had played an active role in November 1984 Sikh Genocide and its aftermath.

As further alleged in the complaint defendant Gandhi played an active role in organizing and implementing genocidal attacks on the Sikh community of India in November 1984, after the death of her mother in law and prime minister of India, Indira Gandhi, by her Sikh bodyguards.

Defendant Gandhi has also played a leading role in shielding the members, office bearers, leaders and supporters of her party that were the main perpetrators of the genocidal attacks against the Sikh community.

Defendant Gandhi exercised command responsibility over the individuals and groups who engaged in genocidal violence against the Sikh community. She conspired with these individuals and groups and aided and abetted them including local police officers, fellow Congress (I) officials, para-military groups and persons or groups acting in coordination with them or under their care and control, in carrying out the genocide, crimes against humanity and attempted extermination of the entire Sikh community in India.

From November 1 through November 4, 1984 approximately 30,000 members the minority religious group, the "Sikhs", were intentionally tortured, raped and murdered and had their property destroyed by groups that were incited, organized, controlled and armed by a political party organization known as "India National Congress" a/k/a, "Congress (I)".

Defendant Gandhi is a citizen of India and currently President of the Congress (I) and its leader. She played an active role in the massacre, exercised command responsibility over it, conspired with, aided and abetted others including local police officers, fellow Congress officials, para-military groups and persons or groups acting in coordination with them or under their control, in carrying out the genocide, crimes against humanity and attempted extermination of the entire Sikh community in India.

This is an action for both compensatory and punitive damages and a declaratory judgment for torts committed by Ms. Gandhi in violation of the laws of nations, customary international law, treaties of the United States including the Convention on the Prevention and Punishment of the Crime of Genocide of 1948, the Torture Victim Protection Act and federal common law.

Defendant is liable, for her active role in organizing and implementing genocidal attacks on the Sikh population of India in or around the November 1984 attacks and their aftermath.

Defendant Gandhi has from 1984 to the present played a leading role in shielding the members, office bearers, leaders and supporters of her party that played an active role in the Genocide; exercised command responsibility over it, conspired with and aided and abetted others including local police officers, fellow Congress (I) officials, para-military groups and persons or groups acting in coordination with the them or under their care and control, in carrying out the genocide, crimes against humanity and attempted extermination of the entire Sikh community in India.

On September 09, plaintiffs filed an *ex parte* motion requesting the court to accomplish service of summons and complaint on the defendant through for alternate means by serving the same on the hospital and security staff at Memorial Sloan Kettering Cancer Center, New York. In the evening of September 09, 2013, plaintiffs' counsel served the summons, complaint and the court order authorizing the service through hospital and security staff of Sloan Kettering on three different individual staff members of the Memorial Sloan Kettering. The plaintiffs' counsel while handing the court order, summons, complaint and related documents, advised and informed the staff members that as per the orders of the court, they should deliver the summons and complaint to Ms. Sonia Gandhi who is under treatment at the hospital. Importantly, none of hospital staff

member refused the presence of defendant Ms. Sonia Gandhi at the hospital. Many months later, the defendant through her own unsworn and unwitnessed declaration challenges the service by claiming that she was not present in New York between September 02 through September 09, 2013.

**DEFENDANTS' MOTION SHOULD BE DENIED IN ITS ENTIRETY**

In essence, defendant claims that this Court does not have either personal or subject matter jurisdiction and, even if it did, it should ignore the detailed factual allegations in the amended complaint and absolve the defendant for her involvement in the Sikh Massacre of 1984. See generally Memorandum In Support of Defendant Sonia Gandhi's Motion to Dismiss dated January 13, 2014 (hereinafter "MTD"). The primary contention upon which Defendant bases her argument is that this Court lacks personal jurisdiction over her because she was never served because she was not present in New York or even in the United States on September 09, 2013 when the plaintiffs' served the defendant through hospital and security staff at Memorial Sloan Kettering Cancer Center in New York. See alleged Declaration of Sonia Gandhi, signed on January 10, 2014 and submitted on January 13, 2014. This declaration is not attested to nor is it a sworn statement made under the penalties of perjury. Defendant also claims that this Court lacks subject matter jurisdiction under Alien Tort Statute (ATS) in the light of recent Supreme Court decision in *Kiobel v. Royal Dutch Petroleum Co.*, --U.S.--, 133 S. Ct. 1659 (2013). The Defendant also argues that "Sikhs For Justice" and Mohender Singh are not proper plaintiffs; defendant be granted immunity; statute of limitation has expired and plaintiffs have failed to state a claim.

Defendant's arguments are specious and should be swiftly rejected.

## POINT I

## DEFENDANT WAS PROPERLY SERVED AND HAS FAILED TO REBUT THAT SHE HAS NOT BEEN PROPERLY SERVED

Defendant argues to this Court that service of process was insufficient and therefore the Court does not have personal jurisdiction over the defendant. To rebut personal service, defense counsel produces a document that he purports to be from Sonia Gandhi. In this alleged document from Sonia Gandhi, Ms. Gandhi states that she was not in New York or even in the United States during September 02 through September 09, 2013.

This document is rank hearsay. It is not sworn to, made under the penalties of perjury, attested to, notarized either in the United States, by a consular officer of the United States or even by an Indian official. The court cannot and should not give any consideration to this document.

We have attempted to resolve the issue of Sonia Gandhi's presence in both the United States and at the hospital where she was served. We have asked the defendant's counsel to provide us limited access to her consular and medical records. Access limited to only her entry and exit entries on her travel document records kept with the United States Department of Homeland Security or the consular office and her medical records from the hospital where she was served but narrowly limited to only when and if she was treated at the hospital the during the dates in question. Defense counsel has refused to consent to the above.

We understand that Sonia Gandhi is a powerful political figure in India but here in the United States she stands before this court as defendant Sonia Gandhi who has been summoned to answer for serious tortious allegations in that that she violated the laws of nations.

She should not be given any special deference. There is a factual dispute as to whether she

was in the hospital on the date she was served at the hospital. The court should hold a traverse hearing where admissible evidence will be presented and the court can then determine if she was or was not in the hospital at the time she was served.

Defendant contends that this Court "lacks personal jurisdiction" over her "because she has never been served with the summons and complaint." Br. p. 2. As detailed herein, the defendant "has never been served with a summons and complaint" is simply untrue; service of process was effectuated and valid. Pursuant to Federal Rule of Civil Procedure 4:

> [A]n individual...may be served in a judicial district of the United States by...following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or...delivering a copy of the summons and of the complaint to the individual personally; [or]... delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1); 4(e)(2)(A)-( c ). These requirements were satisfied. In addition, Federal Rule of Civil Procedure 4(e)(1) allows for "following state law for serving a summons[.]" As discussed below, service is also appropriate pursuant to provisions of CPLR § 308.

A. <u>PLAINTIFF'S SERVICE OF PROCESS WAS PROPER</u>

Defendant's alleged conclusory, unsworn assertion that she was not in the State of New York during the plaintiff's attempts to serve process of the Complaint and Summons is insufficient to rebut plaintiff's sworn affirmation attesting under penalties of perjury to service as required by the Court's September 9, 2013 Order. Thus, defendant's motion for dismissal on the basis of lack of personal jurisdiction must be denied.

No one form of substitute service is favored over any other so long as the method chosen is reasonably calculated to give the defendant actual notice of the pendency of the lawsuit and an

opportunity to present her defense.

International Controls Corp. v. Vesco, 593 F.2d 166, 176 (2d Cir. 1979) the Court held that courts can authorize any method of service as long as it is reasonably calculated to give the defendant actual notice of the pendency of the lawsuit and an opportunity to present his defense. (cert. denied, 442 U.S. 941 (1981). This requirement is satisfied when the method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1017-17 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Service as proscribed by a court order satisfies this requirement. In condoning service of process by publication in the *Int'l Herald Tribune* the Court in SEC v. Tome, 833 F.2d 1086, 1094 (2d Cir. 1987), held that service may be effectuated by means "including publication, ordinary mail, [and] mail to the defendant's last known address . . ." *Id.* at 1016; Levin v. Ruby Trading Corp., 248 F.Supp. 537, 541-44 (S.D.N.Y. 1965) (employing service by ordinary mail); Int'l Controls Corp. v. Vesco, 593 F.2d 166, 176-78 (2d Cir. 1979) (approving service by mail to last known address).

In Bersch v. Drexel Firestone, Inc. 389 F. Supp. 446 (SDNY 1974), *rev'd in part on other grounds,* 519 F.2d 974 (2d Cir. 1975), *cert. denied,* 423 U.S. 1018, 96 S. Ct. 453, 46 L. Ed.2d 389 (1975) the 2nd Circuit Court held that service of process is not rendered invalid because defendant refuses to accept service as long as delivery has been made to him. *See also International Controls,*593 F.2d 166 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S. Ct. 2884, 61 L. Ed.2d 311

(1979) (where defendant had repeatedly evaded attempts at service of process, the court ordered, pursuant to old Rule 4(i)(l)(E), that the papers could be served by depositing them upon the premises of defendant's last known address, which was in the Bahamas, and mailing a copy to defendant at that address.); Levin v. Ruby Trading Corporation, 248 F. Supp. 537 (SD NY 1965) (where attempted service by registered mail pursuant to old Rule 4(i)(1)(D) and personal service pursuant to old Rule 4(i)(1)(C) proved unsuccessful, the court ordered service by ordinary mail on attorneys for the defendant. The courts in this cases held that particularly since these resulted in actual notice, the methods chosen accorded defendant due process of law.

Once plaintiff provides an affidavit by a person who is over 18 years of age and not a party to the case, he has shown prima facie proof of service. Thus, the burden shifted to defendant to show defective service that did not provide actual notice or opportunity to defend.

Defendants have not met the burden of showing that plaintiff's affidavit lacks sufficient facts and that service was improper.

Instead, defense counsel provides what purports to be a written statement from defendant Gandhi. This is an unsworn and unattested document written statement devoid of facts. It fails to rebut the plaintiff's assertion that defendant was served in the manner proscribed by this court's order. *See* Affirmation of Service by Plaintiffs' attorney Guljit Bains at # 11.

This written statement merely alleges that she was not in the State on the day service was effectuated. However, the persons who received process on her behalf did not deny that she was under treatment of the Memorial Sloan Kettering Cancer Center at that time, this statement does not provide conclusive proof of her alternative whereabouts on the date in question, it does not deny that the hospital staff actually delivered the summons and complaint to her nor how service

offends due process. Since the defendant has not met her burden to rebut the presumption of service created by the affidavit of service, her motion to dismiss on the instant ground should be dismissed.

At best Defendant raised issues of fact regarding service that must be resolved at a hearing. Under NYCPLR, a process server's affidavit is prima facie evidence of service. A defendant has to do more than just deny receipt to even get to a transverse hearing. In *North American v. Mifsud,* ___Misc. 3d ___, Index No. 16400/98 (Nassau Co. Aug. 4, 2007)(Engel, J.S.C.), the defendant did just that by producing an affidavit demonstrating that he did not live at the residence where service is said to have taken place.

B. THE COURT SHOULD HOLD A HEARING OR ALLOW LIMITED JURISDICTIONAL DISCOVERY ON THE ISSUE OF PERSONAL JURISDICTION AND DEFENDANT'S PRESENCE IN NEW YORK

If the court is not inclined to dismiss the defendant's defense of improper service the court should schedule a traverse hearing where defendant Sonia Gandhi can provide admissible non hearsay testimony subject to cross examination as to her presence or lack of presence in New York when she was served. The plaintiffs have already filed a request under Freedom of Information Act (FOIA) with the US Customs and Border Protection to verify the defendant's entry and exit records. The Plaintiffs' request that court should allow limited jurisdictional discovery to obtain hospital records from the Memorial Sloan Kettering Cancer Center where defendant was believed to have been treated during September 02 and September 09, 2013. Due to the privacy laws governing the medical records under The Health Insurance Portability and Accountability Act of 1996 (HIPAA), the plaintiffs would need either consent of the defendant agreeing to release the medical records of Sloan Kettering merely to confirm or deny her being

under treatment there during the relevant period OR an order from the court to obtain records from the Sloan Kettering confirming or denying the defendant having been treated during the requisite time period.

C. DEFENDANT'S CLAIM OF LACKS GENERAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE IS REDUNDANT DUE TO A) COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT BY VIRTUE OF PERSONAL SERVICE ON THE DEFENDANT; (B) THE DEFENDANT HAS UTTERLY FAILED TO ALLEGE THAT SHE HAS NO CONTACTS WITH THE FORUM STATE

Defendant claims that this Court does not have personal jurisdiction over Ms. Gandhi and New York's long arm statute does not apply as defendant lacks contacts and consequently no general jurisdiction of the court. Defendant is wrong. For the reasons set forth below, this Court has personal jurisdiction over defendant.

"For a claim that arises under federal law, serving a summons...establishes personal jurisdiction over a defendant if...the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and . . . exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(A) and (B): "Subdivision (k)(2) dissolves all sovereign lines in such a case and allows the service of the federal summons anywhere at all--state, nation, or beyond." See Fed.R.Civ.P. 4 (commentary). At a minimum, Plaintiffs have satisfied these requirements. *See* Plaintiffs' Affidavit of Service at # 11.

Since the defendant was personally served while she was in New York, the court does not need to apply the long arm statute and general jurisdiction.

Service of process on the defendant while she is present in New York is a time-honored basis for the exercise of *in personam* jurisdiction. Indeed, in its first ruling on the relationship

between due process and territorial jurisdiction, the Supreme Court declared in 1877 that presence, in effect, was the only permissible means of obtaining personal jurisdiction See *Pennoyer v. Neff,* 1877, 95 U.S. (5 Otto) 714, 24 L.Ed. 565. The presence basis is so much a part of the jurisdictional tradition in New York that its existence has been taken for granted. A rare judicial pronouncement on point is contained in *Rawstorne v. Maguire,* 1934, 265 N.Y. 204, 207, 192 N.E. 294, 295, where the Court of Appeals said, "We may assume that the courts of the State can by [a reasonable method of] service obtain jurisdiction of the person of one who is physically within the State."

Presence is a so-called "general" basis of jurisdiction, meaning that the claim asserted by the plaintiff need not have any relationship to activities of the defendant in New York. *See Kevin M. Clermont, Civil Procedure: Territorial Jurisdiction and Venue* 52-53 (1999). Consider, for example, a California domiciliary who has breached a contract made in California with a Pennsylvania domiciliary. If the Pennsylvanian commences an action in New York Supreme Court and uses a proper method to serve process on the Californian while she happens to be in New York, the court will thereby acquire *in personam* jurisdiction to adjudicate plaintiff's contract claim. The purpose and duration of a defendant's presence in New York generally are irrelevant to the inquiry. See Restatement (Second), Conflict of Laws § 28, comment (a) (1971). "Transient" presence, in other words, will suffice.

Is presence jurisdiction consistent with the modern notions of due process that were introduced in *International Shoe Co. v. Washington,* 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 See Commentary C301:1, above. The apparent answer is yes, according to the 1990 decision of the Supreme Court in *Burnham v. Superior Court of California*, 1990, 495 U.S. 604, 110 S.Ct.

2105, 109 L.Ed.2d 631. There, a New Jersey domiciliary was served with process in California while temporarily in the state to conduct some business and to visit his children. The cause of action sued upon in the California court had no relationship to any of his California activities. The Supreme Court was unanimous in upholding jurisdiction. Similarly, defendant Gandhi, while she was in New York, was personally served in New York through court's order allowing alternate service of summons and complaint by serving the same on the hospital and security staff at the Memorial Sloan Kettering Cancer Center, New York.

The Defendant failed to allege or claim in her motion and in her supporting declaration that she lacks contacts with New York and instead her declaration only claims her absence from New York between September 02 through September 09, 2013. The defendant's challenge to lack of general jurisdiction is without any supporting evidence or even claim from defendant herself. The defendant's unsworn and unwitnessed declaration challenging the service does not even assert that defendant lacks any contacts with the forum state. In the absence of any assertion from the defendant, this court should deny this aspect of defendant's motion.

**POINT II**

**THE COURT HAS SUBJECT MATTER JURISDICTION**

A. THIS COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THE INSTANT CASE FALLS WITHIN THE EXCEPTION PROVIDED BY THE SUPREME COURT IN *KIOBEL V. ROYAL DUTCH PETROLEUM CO.*, --U.S.--, 133 S. CT. 1659 (2013)

In the First Amended Complaint, plaintiffs asserted that this Court has jurisdiction over their claims via the ATS. *Amended Complaint* [# 17]. The ATS provides that district courts "shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of

the law of nations or a treaty of the United States." 28 U.S.C. § 1350. To establish jurisdiction under the ATS, a plaintiff must allege facts "sufficient to establish that: (1) they are aliens; (2) they are suing for a tort; and (3) the tort in question has been committed in violation of the law of nations or a treaty of the United States." *Mwani v. Bin Ladin,* Civil Action No. 99–125, 2006 WL 3422208, (D.D.C. Sept. 28, 2006) (citing *Kadic v. Karadzic,* 70 F.3d 232, 238 (2d Cir.1996); *Doe I v. Exxon Mobil Corp.,* 393 F.Supp.2d 20, 24, 28 (D.D.C.2005); and *Burnett v. Al Baraka Inv. & Dev. Corp.,* 274 F.Supp.2d 86, 99–100 (D.D.C.2003)).

When the Supreme Court granted certiorari in the *Kiobel* case, it intended to examine whether the law of nations recognized corporate liability. *See Kiobel,* 133 S.Ct. at 1663. It was only after oral argument on that issue that the Justices requested supplemental briefing addressing the **extraterritorial** application of the statute. Specifically, the Court requested briefing on "[w]hether and under what circumstances the [ATS] allows courts to recognize a cause of action for violations of the law of nations occurring within the territory of a sovereign other than the United States." *Id.*

The Justices were unanimous in the result, but differed in their rationales. The majority of the Justices held that the ATS could not provide jurisdiction for foreign plaintiffs seeking redress in United States Courts for conduct that occurred on foreign soil, because the presumption against **extraterritorial** application of federal law was not overcome by the text or history of the ATS. *Id.* at 1669.

The majority opinion with respect to jurisdiction over acts that occurred outside the United States1. In holding that "all the relevant conduct" in the *Kiobel* case "took place outside the United

1 This is aside from acts involving pirates or occurring on the high seas, for which jurisdiction under the ATS

States," and therefore jurisdiction under the ATS was improper, the majority added that "even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." Id. Simply stated, the Court said that, in some instances, an act occurring outside the United States could so obviously touch and concern the territory of the United States that the presumption against **extraterritorial** application of the ATS *is* displaced.

The concurring Justices each offered support for and different prospective variations of, "**touch** and **concern** with sufficient force" test elucidated by the majority.

Justices Alito and Thomas agreed outright that the Court's language left "much unanswered." Similarly, Justice Kennedy agreed that "leaving open a number of significant questions regarding the reach and interpretation of the [ATS]" was "a proper disposition." *Kiobel,* 133 S.Ct. at 1669 (J. Kennedy, concurring).

The separate concurrence of Justice Kennedy made the limited reach of Kiobel manifest. "Other cases," he noted, "may arise with allegations of serious violations of international law principles protecting persons ...; and in those disputes the proper implementation of the presumption against extraterritorial application may require some further elaboration and explanation." 133 S.Ct. at 1669.

The Supreme Court's language "leaving much answered" by its very nature delegate the lower courts to formulate their own factual determinations on a case by case basis.

Justices Alito, Thomas, and Kennedy's concurring opinion in *Kiobel, supra,* provides that

---

remains, as such cases "do [ ] not typically impose the sovereign will of the United States onto conduct occurring within the territorial jurisdiction of another sovereign, and therefore carr[y] less foreign policy consequences." *Kiobel,* 133 S.Ct. at 1667.

it is their intent to leave the definition of touch and concern as general, conclusory, and vague. The reasoning can only be that the definition is fact specific. Touch and concern must be determined on a factual case by case basis by the lower courts.

Justice Breyer, with whom Justices Ginsberg, Sotomayor, and Kagan joined, offered slightly different language, stating that he "would find jurisdiction under [the ATS]" where "the defendant's conduct substantially and adversely affects an important American national interest, and that includes a distinct interest in preventing the United States from becoming a safe harbor ... for a torturer or other common enemy of mankind." *Id.* at 1671 (J. Breyer, concurring).

They continued to state that they could find rebuttal of the presumption where (1) the alleged tort occurs on American soil, (2) the defendant is an American national, or **(3) the defendant's conduct substantially and adversely affects an important American national interest, and that includes a distinct interest in preventing the United States from becoming a safe harbor (free of civil as well as criminal liability) for a torturer or other common enemy of mankind**. (emphasis added)

The majority in *Kiobel, supra*, states "Pirates were fair game wherever found, by any nation, because they generally did not operate within any jurisdiction." Ibid. I very much agree that pirates were fair game "wherever found." Indeed, that is the point. That is why we asked, in Sosa, who are today's pirates? Certainly today's pirates include torturers and perpetrators of genocide. And today, like the pirates of old, they are "fair game" where they are found. Like those pirates, they are "common enemies of all mankind and all nations have an equal interest in their apprehension and punishment."

" for purposes of civil liability, the torturer has become—like the pirate and slave trader before him—*hostis humani generis*, an enemy of all mankind.' Filartiga v. Pena–Irala, 630 F.2d 876, 890 (C.A.2 1980) (alteration in original)

Although justices Breyer, Ginsberg, Sotomayor and Kagen list some circumstances where they would find the presumption of extraterritoriality rebutted, they did not find that these would be the only instances and nothing in their decision is inconsistent with the position that touch and concern should be decided factually on a case by case basis.

The question before this court today is whether, the facts and circumstances of the instant case, "touched and concerned" the United States with "sufficient force" to displace the presumption against extraterritorial application of the ATS.

The plaintiffs have alleged that defendant Sonia Gandhi exercised command responsibility over the individuals and groups who engaged in genocidal violence against the Sikh community. She conspired with these individuals and groups and aided and abetted them including local police officers, fellow Congress (I) officials, para-military groups and persons or groups acting in coordination with the them or under their care and control, in carrying out the genocide, crimes against humanity and attempted extermination of the entire Sikh community in India. As a result of her actions, from November 1 through November 4, 1984 approximately 30,000 members the minority religious group, the "Sikhs", were intentionally tortured, raped and murdered and had their property destroyed by groups that were incited, organized, controlled and armed by a political party organization known as "Indian National Congress. From November 1, 1984 to through the present, Sonia Gandhi has and continues to, against the laws of India and the law of nations, illegally and immorally shield her co-conspirators from prosecution in India.

The Plaintiffs have alleged in a non-conclusory factual manner, giving time, dates and individuals involved, that defendant Gandhi engaged in genocidal attacks against innocent Indians whose only crime was that they belonged to the Sikh community and practiced the Sikh religion. Ms. Gandhi, then for the next thirty years protected her co-conspirators using her power as the head of the Indian National Congress, the ruling party.

The facts in this case are what justices Kagen, Sotomayor, Ginsberg and Breyer envisioned as rebutting the presumption of extraterritoriality. They wrote in their concurring opinion that preventing the United States from becoming a safe harbor ... for a torturer or other common enemy of mankind is a distinct American interest and they would find jurisdiction under [the ATS]" where "the defendant's conduct substantially and adversely affects an important American national interest.

The plaintiffs have alleged that Sonia Gandhi engaged in among other things torture, extrajudicial killing and genocide and the extrajudicial protection of those co-conspirators who did her bidding from prosecution.

It is an essential American interest that Sonia Gandhi not be given a "safe harbor" in the United States after committing heinous violations of the laws of nations. A safe harbor where she comes for medical care, stays at the best hotels in the world, gets secret service protection, Homeland security, New York City Police Department escort and security detail , consular privileges and other benefits.

Upon information and belief, she also comes to the United States to monitor her American investments. Her son was educated in the United States, Rahul Gandhi attended Harvard University. Sonia Gandhi also owns both commercial and residential real estate in the United

States.

The court cannot allow defendant Sonia Gandhi to avail herself of the benefits of a "safe harbor" in the United States and then be immune from civil claims for torts that are alleged to have been committed in India. Especially since the nature of the claims violates the law of nations.

The actions of the defendant, using the United States as a safe harbor after violating the laws of nations, touch and concern in a substantial manner the United States

Secondly, the named plaintiffs are asylees in the United States from India. The United States has already made a judicial determination that the named plaintiffs are asylees who were persecuted in India because they are Sikhs.

They have alleged that they were the victims of the genocidal attacks that defendant Sonia Gandhi orchestrated in 1984 and after and then protected her co-conspirators from prosecution for almost 30 years using her position and political power as the head of the Indian National Congress.

The plaintiffs cannot return to India due to a well-founded fear of persecution because of their belief as practicing Sikhs. This is not just an allegation made by the plaintiffs but is a judicially determined fact in that the plaintiffs were granted political asylum in the United States

The United States is under an absolute and unequivocal obligation under domestic and international law to not repatriate and refrain from refoulement of the named plaintiffs.

Since the plaintiffs cannot return to India they have no legal recourse or access to the Indian judicial system, as corrupt as it may be. The United States federal courts are the only place where these tort claims can now be heard. The plaintiffs have no other recourse or jurisdiction

where they can lay their claims and allegations of torture, murder, rape and the extrajudicial killing and extra judicial protection of co-conspirators by defendant Sonia Gandhi. .

The Supreme Court left open the question of "just when the presumption against **extraterritoriality** might be 'overcome.' " *Kiobel,* 133 S.Ct. at 1673 (J. Breyer, concurring). One of the circumstances that would fit the Court's framework of "**touching** and **concerning** the United States with sufficient force," it would be the case of plaintiffs regarding whom United States has undertaken an obligation to protect them and not to repatriate them, which means and includes not to indirectly ask them to pursue the legal course against their torturers in the country of their persecution. The United States recognized the inherent harm or death to plaintiffs if they returned to their country for legal recourse.

Thus it is obvious that a case involving the plaintiffs about whom the United States has undertaken an obligation to protect and not repatriate, is tied to our national interests and touch and concern our interests in a substantial manner.

Accordingly, plaintiffs submit that this case **touches** and **concerns** the United States with sufficient force that it falls within the category of cases for which the presumption against **extraterritorial** application of the ATS is displaced. Subject matter jurisdiction is therefore proper.

The fact that the Defendants committed the acts in India should not deprive the Plaintiff of a claim in the United States. Denying jurisdiction to hear this case when the Defendant's actions of playing an active role in organizing and implementing genocidal attacks on Sikh population of India from in or around November 1984 and continuing to the present day; playing a leading role in shielding the members, office bearers, leaders and supporters of her party that played an active

role in the Genocide; exercising command responsibility over it; conspiring with and aiding and abetting others including local police officers, fellow Congress (I) officials, para-military groups and persons or groups acting in coordination with the them or under their care and control, in carrying out the genocide, crimes against humanity and attempted extermination of the entire Sikh community in India, are analogous to providing a safe harbor to torturers and perpetrators of crimes against humanity.

B. "SIKHS FOR JUSTICE" IS A PROPER PLAINTIFF AS IT HAS ASSOCIATIONAL STANDING

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, supra* , 528 U.S. at 181, citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Here, defendant contends that plaintiff Sikhs For Justice Inc., a New York not-for-profit corporation that was organized to "seek justice and compensation" for the victims of the Sikh Massacre of 1984, fails the third prong of the Hunt test, as "associations may *only* seek prospective relief for their members, such as a declaration or injunction . . . because prospective relief does not require individual members' participation in the lawsuit." Br. p. 25. Defendant's conclusion that associations may "only" seek prospective relief is misleading. Plaintiffs are not prohibited from requesting relief other than that which is prospective in nature. The Supreme Court in Hunt, supra, stated that it relied in "substantial measure" on the relief

being sought, however nothing in the Hunt decision forbids this plaintiff from seeking compensatory and punitive damages as an association. In any event, the plaintiff association here seeks declaratory relief which if awarded will apply to and benefit its members without reference to individual circumstances. See Am. Comp. pp. 48-49. Therefore, this branch of defendant's motion should be denied.

C. MOHENDER SINGH IS A PROPER PLAINTIFF

Plaintiff Mohender Singh is proper plaintiff on his own behalf and in his own accord, has secured authorization from the family members in India will secure appropriate representative status under NYCPL, if and when required.

D. DEFENDANT MS. GANDHI IS NOT ENTITLED TO IMMUNITY

Defendant fails to meet her burden of proving he is entitled to sovereign immunity. Prior to the recent Supreme Court decision in *Samantar v. Yousef*, 130 S.Ct. 2278 (2010), government officials claiming sovereign immunity in this Circuit did so under the Foreign Sovereign Immunities Act ("FSIA") which was held to allow such claims by officials. *Samantar* held, however, that the FSIA only applies to claims of sovereign immunity by states themselves. Id. at 2285-89. The Court added that common law would continue to govern claims of immunity by officials, and, without purporting to declare the standard, cited the Restatement (2d) of Foreign Relations Law § 66(f) which provides for immunity to:

(f) any other public minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state *See id.* at 2290 (quoting Restatement (2d) Foreign Relations Law § 66(f)).

The Court also emphasized the additional language "if the effect of exercising jurisdiction

would be to enforce a rule of law against the state" that goes beyond a mere "official capacity" test. Id.

Defendant claims that plaintiffs in their FAC have stated that defendant was "head of the state", which is false. Not only that is it openly verifiable public record and part of recorded history that defendant Sonia Gandhi herself has never been head of the state or held any position within the Government of India, the defendant has misconstrued and twisted the plaintiffs' assertion. The plaintiffs' asserted in FAC that:

> "When Rajiv Gandhi took over the control of Congress party and the country, defendant Ms. Sonia Gandhi had been his wife of sixteen (16) years. Upon information and belief, in those sixteen years, Ms. Sonia Gandhi cemented herself as a vocal political figure well known to be a vital partner in her husband's political activities and decision making.
>
> Immediately after the death of Ms. Indira Gandhi on October 31, 1984, Rajiv and his wife, the defendant Ms. Sonia Gandhi, were the political powers."

Any reading of the plaintiffs assertion as quoted above, does not amount to defendant holding any position within the Government of India or being head of the State, a basic pre requisite to any claim of immunity. Nowhere, the plaintiffs claim that defendant was head of the state or had any official position, instead the plaintiffs, in very clear terms accused the defendant of using her influence over the government and state machinery as being the spouse of the then Prime Minister and later on till to-date, her position as head of the ruling political party of India. Additionally, defendant, on her own and besides misconstruing the plaintiffs claim, has failed to claim that she holds any official position. The plaintiffs claim, in real is, that defendant is *de facto* ruler of the country, a position which is not covered under the ambit of foreign sovereign or common law immunity.

Defendant fails to meet her burden of proving that she is entitled to sovereign immunity. Prior to the recent Supreme Court decision in *Samantar v. Yousef*, 130 S.Ct. 2278 (2010), government officials claiming sovereign immunity in this Circuit did so under the Foreign Sovereign Immunities Act ("FSIA") which was held to allow such claims by officials. *Samantar* held, however, that the FSIA only applies to claims of sovereign immunity by states themselves. *Id.* at 2285-89. The Court added that common law would continue to govern claims of immunity by officials, and, without purporting to declare the standard, cited the Restatement (2d) of Foreign Relations Law § 66(f) which provides for immunity to:

(f) any other public minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state *See id.* at 2290 (quoting Restatement (2d) Foreign Relations Law § 66(f)). The Court also emphasized the additional language "if the effect of exercising jurisdiction would be to enforce a rule of law against the state" that goes beyond a mere "official capacity" test. Id.

Defendant neither did nor claims that she acted in any "official capacity" and even if she claims so, that is based on her say-so. Even if she acted under color of law, the Second Circuit case that first recognized ATS liability for overseas human rights violations Filartiga v. Pena-Irala,. 630 F.2d 876 (2d Cir.1980). noted the distinction between official governmental acts and those which occur separately and distinctly under the color of law, stating [W]e doubt whether action by a state official in violation of the Constitution and laws of the Republic of Paraguay, and wholly unratified by that nation's government, could properly be characterized as an act of state. Paraguay's renunciation of torture as a legitimate instrument of state policy, however, does not strip the tort of its character as an international law violation, if it in fact occurred under color of government authority. Id. at 889-890 (citation omitted).

Participation in the abhorrent actions alleged here cannot be deemed legislative. In Bogan v. Scott-Harris, 523 U.S. 44, 54-56 (1998), the Supreme Court described the test for legislative immunity in terms that clearly exclude Gandhi's conduct. According to the Court, the two relevant factors are (1) whether the defendants' actions were legislative "in form," i.e., whether they were "integral steps in the legislative process," id. at 55; (2) whether defendants' actions were legislative "in substance," i.e., whether the actions "bore all the hallmarks of traditional legislation," including whether they "reflected ... discretionary, policymaking decision[s] implicating the budgetary priorities of the [government] and the services the [government] provides to its constituents." Id. at 55-56. *See State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 89 (2d Cir. 2007)(describing Bogan).

Defendant Gandhi also seeks dismissal on the basis of common law sovereign immunity. Her argument is based on an erroneous misreading that the Complaint sues her for actions in an "official capacity" and a fallacious attempt to rewrite the Complaint by claiming she acted officially.

Defendant's bald and conclusory claim to common law immunity without any explanation and supporting facts should also be dismissed.

E. PLANTIFFS ARE PROPERLY SEEKING RELIEF AGAINST MS. GANDHI, AN INDIVIDUAL AND EVEN OTHERWISE ANY CLAIM AGAINST "CONGRESS-I" WOULD BE PROPER UNDER ATS AS IT DOES NOT BAR RELIEF AGAINST ENTITIES.

Defendant assert that plaintiffs improperly seek relief against Ms. Gandhi while their actual claim is against Congress (I). The defendant is wrong on two counts. Notwithstanding, plaintiffs

claim of relief against Congress (I), as alleged in the FAC, the plaintiffs are seeking relief against Ms. Sonia Gandhi personally for her actions in furtherance of perpetration of torts against the plaintiffs. Even otherwise, the defendant's claim that since this claim is against an entity and therefore must be dismissed for lack of subject matter jurisdiction under *Kiobel v. Royal Dutch Petroleum Co*., is a plain misreading of Supreme Court's ruling in Kiobel.

F. THE PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATION AND IN THE ALTERNATIVE PLAINTIFFS HAVE STRONG BASIS FOR EQUITABLE TOLLING

The defendant's arguments regarding statute of limitations are baseless and should be disregarded. The complaint is based on a continuous string of events which started in November 1984 with the most recent occurrence in August 2013, alleged in the FAC (see paragraphs 1, 3 and 4 of the FAC at page 1, thus making the instant suit timely. Even otherwise, the plaintiffs have strong basis for equitable tolling because of their recent relocation to the United States after fleeing India due to persecution suffered by them on account of the events of November 1984 *See* Paragraph 34 and 36 of the FAC at page 7. Therefore, the defendant's motion on this point ought to be dismissed.

## POINT III

## THE AMENDED COMPLAINT PROPERLY STATES A CLAIM

Contrary to Defendant's contention, plaintiffs FAC fully complies with the FRCP Rule 9 and sufficiently pleads a cause of action. "A pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief" *See FRCP* Rule 9(2). Under these rules, each averment of a pleading shall be simple, concise and direct, and

pleading must not be so vague and ambiguous that it cannot be reasonably answered. *C. I. T. Financial Corp. v. Sachs,* S.D.N.Y.1950, 10 F.R.D. 397

A complaint, which was in fair compliance with this rule requiring pleadings to be simple, concise, and direct, was not subject to dismissal for violation of this rule. *United Shoe Machinery Corporation v. Becker,* E.D.N.Y.1943, 51 F.Supp. 802.

Under notice pleading, plaintiff may plead conclusions, so long as the conclusions provide defendant with minimal notice of the claim. *Frieri v. City of Chicago,* N.D.Ill.2001, 127 F.Supp.2d 992 Freeman v. Godinez, N.D.Ill.1998, 996 F.Supp. 822, *Jennings v. University of North Carolina at Chapel Hill,* M.D.N.C.2002, 240 F.Supp.2d 492

In Jennings, supra, conclusory allegations that state university soccer coach and assistant coach subjected players to "inappropriate conduct and unwelcome sexual harassment," creating "hostile environment," were sufficient to state §1983 claim. The court held that "complaint provided fair notice to coach and assistant coach regarding basis of players' claim".

In a motion to dismiss for failure to state a claim, the court must assume truth of all well-pleaded facts in plaintiff's complaint and view them in a light most favorable to plaintiff; in addition, all reasonable inferences must be indulged in favor of plaintiff and pleadings must be liberally construed. *Butler v. Capitol Federal Sav., D.Kan.*1995, 904 F.Supp.

Pleading rules, designed to avoid and reduce long and technical allegations, are necessarily supplemented by procedures, including summary judgment, which enable a party to have a judgment in a relatively short time if there is actually no bona fide claim presented. A. T. Brod & Co. v. Perlow, C.A.2 (N.Y.) 1967, 375 F.2d 393.

In the instant case, the plaintiff's in their FAC have clearly stated specific events with dates and places alleging defendant's conduct in violation of plaintiffs' rights which give rise to the plaintiffs' entitlement to claim. For example, the plaintiffs in FAC have alleged:

"the Sikh Genocide of November 1984, was planned in several meetings held at various locations throughout Delhi including Congress (I) headquarters located at 24 Akbar Road, New Delhi and All India Institute of Medical Sciences (AIIMS) on October 31 and November 01, 1984"

Tying the factual background to the defendant, the plaintiffs go on to further allege that: "**upon information and belief, defendant Ms. Sonia Gandhi attended at least one of these meetings in which systematic attacks on Sikhs population of India were being planned and ordered**" (emphasis added).(See FAC paragraph 18 & 19).

These allegations are more fact specific and detailed than the conclusory allegations in *Jennings Supra* where the court held that the statement containing allegation that "inappropriate conduct and unwelcome sexual harassment" creating "hostile environment," was sufficient for pleading purposes.

The court here specifically held that these conclusory allegations were enough to give the defendants minimal notice of claim.

## POINT IV

## NO PART OF THE AMENDED COMPLAINT WARRANTS TO BE STRICKEN

The defendant's contention that the bulk of FAC warrants to be stricken is baseless. The defendant is attempting to cover up the gory details and consequences of her actions that she has been undertaking since November 1984 as a result of which thousands of Sikh men, women and

children have lost their lives and property and assets. The defendant is attempting to refute the factual basis of the complaint which is obviously improper by way of motion to dismiss. The defendant seemingly squirms about the parts of the FAC that state the details of the genocide committed against Sikh community of India during November 1984 with the help and/or connivance of the Indian government, administration and police on the behest of Congress (I) and its leadership including the defendant. In its frenzy, the defendant also challenges the discovery of a mass grave of Sikhs in the village of Hondh Chillar, state of Haryana, a fact which is incontrovertible and has been vastly reported in the media. Therefore, the defendant's motion on this point ought to be denied.

## POINT V

## DEFENDANT'S REQUEST TO ENJOIN PLAINTIFF "SIKHS FOR JUSTICE" FROM FILING ANY FURTHER SUITS RELATING TO NOVEMBER 1984 MASSACRE IS YET ANOTHER ATTEMPT BY THE DEFENDANT TO COVER UP HER AND HER PARTY'S CRIMES COMMITTED AGAINST INNOCENT SIKHS IN NOVEMBER 1984 AND ONWARDS

The defendant's request to enjoin the plaintiff Sikhs For Justice from filing any further suits relating to November 1984 is egregious and violative of the First Amendment of the United States. Defendant appears to be under the impression that business is conducted in the United States as it is conducted in India where the voice of victims can be muzzled through or outside the courts. The defendant, her party and her country India has a rich legacy of denying justice and muzzling the voice of victims of November 1984. The request to enjoin Sikhs For Justice from filing any further suits should be denied.

## POINT VI

## VENUE IN THIS CASE IS PROPER AND TRANSFER OF THIS MATTER TO SOUTHERN DISTRICT OF NEW YORK WOULD BE IMPROPER AS THE DEFENDANTS IN THE CASE BEFORE THE SOUTHERN DISTRICT ARE DIFFERENT

The defendant's request for the transfer of this matter to the Southern District of New York based on a pending lawsuit there should be denied. The lawsuit pending before the Southern District of New York is against the Indian National Congress aka Congress-I, an entity and political party of India. Whereas, the instant suit is against the individual defendant Ms. Sonia Gandhi in her personal capacity.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that defendant's motion to dismiss should be denied in its entirety.

Dated: February 10, 2014

GULJIT KAUR BAINS
Attorney for the Plaintiffs
Ali & Bains PC
118-35 Queens Blvd, Suite 1700
Forest Hill, NY 11375
T: 718-544-8000 F:718-480-1244
gbains@alibainsfirm.com