UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
SIKHS FOR JUSTICE, on behalf of deceased                 :
and injured members of the Sikh community,               :
                                                         :
JASBIR SINGH, individually and on behalf of              :    **MEMORANDUM**
deceased family members,                                 :    **DECISION AND ORDER**
                                                         :
and MOHENDER SINGH, individually and on                  :    13 Civ. 4920 (BMC)
behalf of his deceased father, SARDAR                    :
DARSHAN SINGH,                                           :
                                                         :
                                    Plaintiffs,          :
                                                         :
                    - against -                          :
                                                         :
SONIA GANDHI, a national and citizen of India            :
in her personal capacity and as President, Indian        :
National Congress, a/k/a CONGRESS (I)                    :
                                                         :
                                    Defendant.           :
-------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs bring this putative class action pursuant to the Alien Tort Statute, 28 U.S.C. § 1350 (the "ATS"), and the Torture Victim Protection Act, 106 Stat. 73, note following 28 U.S.C. § 1350 (the "TVPA"). Defendant moves to dismiss plaintiffs' Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.[1] Defendant also requests that this Court impose an injunction prohibiting plaintiffs from bringing further litigation. For the following reasons, defendant's motion is granted, except as to her request for an anti-suit injunction.

---

[1] Defendant originally moved to dismiss for lack of personal jurisdiction, but withdrew that portion of her motion.

**BACKGROUND**

When a defendant moves to dismiss for failure to state a claim, the allegations in the complaint are deemed true for the limited purpose of considering the motion. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). The following facts are therefore taken from the Amended Complaint.

On October 31, 1984, Indira Gandhi, then the Prime Minister of India and head of the Indian National Congress ("Congress (I)") political party, was assassinated by her Sikh bodyguards. Her assassination sparked anti-Sikh riots throughout India in November of 1984, during which a large number of Sikhs were killed and injured (the "anti-Sikh riots"). Plaintiff Sikhs for Justice ("SFJ") is a domestic non-profit organization which was "formed to seek justice and compensation for those Sikhs who were injured or whose family members were killed and whose property was destroyed during the Sikh Genocide of November 1984." The two individual plaintiffs, Mohender Singh and Jasbir Singh, are both victims of the anti-Sikh riots.

Mohender Singh ("Mohender") is a native of India who is currently residing in California. Mohender came to America in 2008. Mohender's family home was attacked during the anti-Sikh riots, and his father, Sardar Darshan Singh, and two of his uncles were killed.

The Amended Complaint further alleges that in August 2013, a group of Congress (I) workers attacked Tilak Vihar, an area of New Dehli. Plaintiffs claim, without elaboration, that as a result of this attack "Mohender Singh and his family sustained severe physical and emotional harm." Mohender purports to bring this action on behalf of himself and his deceased father, and also apparently on behalf of his unidentified relatives injured in the 2013 attack on Tilak Vihar.

Jasbir Singh ("Jasbir") is a native of India who also currently resides in California. Jasbir came to America in 2002, and received asylum in 2007. The Amended Complaint alleges that Jasbir's family home was also attacked during the anti-Sikh riots; his uncle was murdered, and Jasbir narrowly escaped. Thereafter, Jasbir was active in a campaign seeking justice for Sikh victims of the 1984 anti-Sikh riots. The Amended Complaint states that Jasbir was detained and tortured by police on several occasions in connection with these activities, allegedly at the behest of Congress (I) leaders.

Defendant Sonia Gandhi is the President of the Congress (I) party, and has been since 1998. Defendant's husband, Rajiv Gandhi, became the Prime Minister of India after the assassination of Indira Gandhi, his mother. The Amended Complaint alleges that defendant participated in the organizing and implementing of the anti-Sikh riots, although the only factual allegation specific to the defendant is that she attended at least one of several meetings that were held at Congress (I) headquarters immediately after the assassination of Indira Gandhi and prior to the anti-Sikh riots. Plaintiffs allege that the anti-Sikh riots were planned at these meetings. Further, plaintiffs allege that beginning in 1998, defendant began a campaign of shielding, protecting and rewarding many of perpetrators of the anti-Sikh riots.

**DISCUSSION**

I. **Alien Tort Statute**

Plaintiffs' claims under the ATS must be dismissed for lack of subject matter jurisdiction because they are plainly barred under the Supreme Court's decision in <u>Kiobel v. Royal Dutch Petroleum Co.</u>, _U.S._, 133 S. Ct. 1659 (2013). As the Second Circuit subsequently made clear in <u>Kiobel</u>, "[t]he Supreme Court expressly held that claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United

States." Balintulo v. Daimler AG, 727 F.3d 174, 189 (2d Cir. 2013) (citing Kiobel, 133 S. Ct. at 1662, 1668–69). Here, all of the events at issue occurred in India. "[I]f all the relevant conduct occurred abroad, that is simply the end of the matter under Kiobel." Balintulo, 727 F.3d at 190.

Kiobel does not, however, prevent plaintiffs from bringing claims under the TVPA. See Chowdhury v. Worldtel Bangladesh Holding, Ltd., 746 F.3d 42, 50-51 (2d Cir. 2014) ("We find no support in Kiobel or any other authority for the proposition that the territorial constraints on common-law causes of action under the ATS apply to the statutory cause of action created by the TVPA.").

## II. Torture Victim's Protection Act

### A. Standing

#### 1. Sikhs For Justice

Defendant argues that SFJ does not have Article III standing to bring this lawsuit. Defendant is correct.

Plaintiffs argue that SFJ has associational standing under Article III. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181, 120 S. Ct. 693 (2000).

As noted by the court in dismissing another action brought by SFJ, SFJ "has not established a 'membership,' or documented any actual individual that it represents who is eligible to bring a claim." Sikhs for Justice Inc. v. Indian Nat'l Congress Party, No. 10 Civ.

2940, 2014 WL 1683798, at *12 & n.9 (S.D.N.Y. Apr. 25, 2014). The same is true here. The sum total of the Amended Complaint's allegations as to SFJ's organization and membership is as follows:

> Plaintiff "Sikhs for Justice" is a domestic not-for-profit corporation organized and existing pursuant to the laws of the State of New York with its principal place of business located at New York, New York and was formed to seek justice and compensation for those Sikhs who were injured or whose family members were killed and whose property was destroyed during the Sikh Genocide of November 1984.

The Second Circuit has rejected similarly vague and conclusory allegations as insufficient to support associational standing. See In re Holocaust Victim Assets Litig., 225 F.3d 191, 196 (2d Cir. 2000) ("Other than PADC's self-proclaimed status as a representative of the Polish community, the record reveals nothing about its size, membership, or activities. We do not even know whether PADC has any members other than the individual intervenors."). Although a non-membership organization may have associational standing in the unusual circumstance where the relationship between the organization and those it seeks to represent "function[s] effectively as a membership organization," id., there is nothing in the record that would permit the Court to conclude that such a relationship exists between SFJ and the Sikh community.

Moreover, SFJ's TVPA claims will clearly require individualized participation. SFJ's Amended Complaint primarily seeks monetary damages, and "courts have been reluctant to allow associational standing in cases that seek monetary relief." Board of Managers of Mason Fisk Condominium v. 72 Berry Street, LLC, 801 F. Supp. 2d 30, 34 (E.D.N.Y. 2011); see also Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members.").

5

Plaintiffs point out that the Amended Complaint also requests, in passing, a declaratory judgment that defendant's actions violated the law of nations. However, this invocation of the "law of nations" clearly refers to plaintiffs' ATS claims, over which the Court lacks subject matter jurisdiction as set forth above. Plaintiffs' TVPA claims require the proof of individual instances of torture or extrajudicial killing.

That these claims would require individual participation is self-evident, and can be demonstrated simply by comparing the claims of the two individual plaintiffs in this action: Mohender's TVPA claim is based on the extrajudicial killing of his father, while Jasbir alleges that he was tortured by the police. It is reasonable to conclude that the claims of all of the Sikhs purportedly represented by SFJ – even leaving aside that those members have not been identified – would similarly vary, and thus require their individual participation. SFJ's claims are therefore dismissed for lack of Article III standing.

### 2. Individual Plaintiffs

Defendant argues that plaintiff Mohender is not a proper plaintiff under the TVPA. Section 2(a) of the TVPA, which provides the basis for civil actions, states as follows:

> (a) Liability.--An individual who, under actual or apparent authority, or color of law, of any foreign nation--
>
> (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
>
> (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

TVPA § 2(a). Despite his claim to be proceeding on his own behalf, the Amended Complaint does not contain any allegations that Mohender was himself tortured. Therefore, Mohender could only state a claim under the TVPA on the basis of his father's extrajudicial killing.

Under New York law, "[a] personal representative is a person who has received letters to administer the estate of a decedent." Est. Powers & Trusts Law § 1–2.13. To be "a claimant in an action for wrongful death", a person must be the decedent's "personal representative, duly appointed in this state or any other jurisdiction." Id. § 5–4.1(1). "The [New York] Court of Appeals has instructed, repeatedly, that this statute must be construed 'strictly.'" In re September 11 Litig., 760 F. Supp. 2d 433, 443 (S.D.N.Y. 2011) (collecting cases).

Here, there is no allegation or evidence that Mohender has been appointed a legal representative of his father's estate in any court. Plaintiffs' opposition to defendant's motion to dismiss on this ground is limited to one sentence, stating: "Plaintiff Mohender Singh is proper plaintiff [sic] on his own behalf and in his own accord, has secured authorization from the family members in India will secure [sic] appropriate representative status under NYCPL, if and when required." Plaintiffs thus essentially concede that Mohender was not a proper plaintiff under the TVPA when this suit was commenced, and is not now.

Indeed, the Southern District of New York recently dismissed a claim by Mohender on this same basis. See Sikhs for Justice, 2014 WL 1683798 at *12. In granting dismissal, the court noted that Indian law would also require plaintiffs to seek judicial authority in order to act as a legal representative, although plaintiffs in this case make no argument as to what law should apply. Thus, it appears that no matter what law applies, Mohender's claims must be dismissed for lack of statutory standing under the TVPA.

Plaintiff Jasbir Singh alleges that he was personally tortured by the police, and thus he is obviously a proper TVPA plaintiff in this regard. But aside from a statement in the caption, the Amended Complaint is entirely unclear as to whether Jasbir also purports to be suing on behalf

7

of anyone else. To the extent he purports to sue on behalf of any deceased relatives, he lacks statutory standing to bring those claims for the same reasons as Mohender.

**B. Statute of Limitations**

The TVPA has a ten-year statute of limitations. TVPA § 2(c). The anti-Sikh riots occurred almost 30 years before plaintiffs filed this lawsuit, and thus the statute of limitations poses an obvious hurdle for plaintiffs.

The Amended Complaint contains some vague allegations that the named plaintiffs have received death threats as a result of their work in seeking justice for the victims of the anti-Sikh riots in India. The Amended Complaint also alleges that a non-party, Surinder Singh, traveled back to India from the United States after his family was threatened by Indian officials, where upon his arrival he was tortured by the police and eventually died from his injuries. Based on these threats and the resultant risks plaintiffs would allegedly face from litigating their claims in India, plaintiffs argue that the statute of limitations should be equitably tolled.

To determine whether equitable tolling should apply, this Court "must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (citations and quotations omitted).

Among the myriad deficiencies in the Amended Complaint is the total lack of detail as to the circumstances surrounding Jasbir's alleged torture. This includes when the torture actually occurred. All the Court can tell from the Amended Complaint is that the alleged torture occurred at some point between 1984 and 2002, when Jasbir came to the United States.

Nevertheless, Jasbir's TVPA claims are plainly time-barred. The Amended Complaint gives absolutely no detail as to the alleged death threats that he received or when he received them. And even assuming that the Amended Complaint's vague allegations that plaintiffs received death threats at some point over the past thirty years are sufficient to toll the statute of limitations, Jasbir has provided no explanation for his failure to file suit after he arrived in the United States in 2002. There is no allegation that Jasbir received any threats after his arrival in the United States, that Jasbir was aware of what happened to Surinder Singh, nor any allegation explaining how this incident prevented Jasbir from filing suit in the United States. The Court therefore cannot determine that Jasbir acted with reasonable diligence after he arrived in the United States, or that extraordinary circumstances prevented him from filing this lawsuit sooner. More than ten years have passed since Jasbir came to the United States. His claims are therefore time-barred.

### C. Failure to State a Claim

Even if the Court had subject matter jurisdiction over plaintiffs' ATS claims and plaintiffs had standing to maintain any claims, the Amended Complaint fails to state a claim. Plaintiffs have simply ignored the pleading requirements set forth in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009). For example, plaintiffs argue that "[u]nder notice pleading, plaintiff may plead conclusions, so long as the conclusions provide defendant with minimal notice of the claim." Plaintiffs even appear to characterize their own allegations as conclusory, by drawing parallels between the allegations here and conclusory allegations held sufficient in a few pre-Twombly cases. Suffice to say, this is not a persuasive approach. In ruling on a motion to dismiss, legal conclusions are not entitled

9

to a presumption of truth, and a plaintiff must allege sufficient factual matter to state a claim for relief that is plausible on its face. See Iqbal, 556 U.S. at 678-79.

Turning first to Jasbir's claim of torture, as noted above, the Amended Complaint provides absolutely no detail as to the circumstances surrounding this alleged torture. "The TVPA's definition of 'torture' is rigorous." Mohammad v. Tarraf, No. 02-CV-282A, 2007 WL 1040031, at *3 (W.D.N.Y. Apr. 4, 2007). The TVPA contains, among other things, a severity requirement. See Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 92-93 (D.C. Cir. 2002). Not every instance of police brutality will constitute torture under the TVPA. Here, the Amended Complaint does not provide a shred of detail beyond the bald statement that Jasbir was tortured. It simply states that at some point subsequent to the anti-Sikh riots, Jasbir was tortured by the Indian police. That is a conclusion, not a factual allegation. It is insufficient to state a claim for torture under the TVPA.[2]

Nor does the Amended Complaint adequately allege that defendant[3] is liable for the extrajudicial killings and torture that occurred during the anti-Sikh riots. The Amended Complaint alleges that the anti-Sikh riots were planned at a several meetings on October 31 and November 1, 1984. The only fact alleged that ties defendant to the anti-Sikh riots is that she allegedly attended one of these meetings. Much of the remainder of the Amended Complaint is devoted to describing the anti-Sikh violence of 1984 and the complicity of Congress (I) officials and Indian law enforcement therein, coupled with conclusory allegations that, for example, "the

---

[2] Plaintiffs' allegations concerning the 2013 violence in Tilak Vihar fail for the same reasons. Even assuming that Mohender could bring a claim as a representative of others who have been tortured – despite the TVPA's limitation of representative actions to claims for extrajudicial killing – the Amended Complaint gives no indication as to what injuries Mohender's unidentified family members allegedly suffered beyond that they "sustained severe physical and emotional harm."

[3] The Court understands plaintiffs to be seeking to hold defendant liable under the TVPA only in her personal capacity, and not as a representative of Congress (I). The Supreme Court has firmly held that only natural persons may be held liable under the TVPA. See Mohamad v. Palestinian Auth., __ U.S. __, 132 S. Ct. 1702 (2012).

actions and omissions of law enforcement in the direct killing of the Sikhs was ordered [sic] by defendant."

The naked allegations of conspiracy in the Amended Complaint are insufficient to state a claim. See Twombly, 550 U.S. at 556-57. The fact that defendant allegedly attended a certain meeting is, at best, an allegation that is "merely consistent with," rather than "plausibly suggesting" liability. Id. The Amended Complaint pleads absolutely no facts as to the content of any orders that the defendant allegedly gave, to whom those orders were given, or whether and how they were carried out. Such factual allegations are particularly necessary here, because all of the killings and torture described in the Amended Complaint were allegedly carried out under the direct leadership or orders of other Congress (I) officials who are not defendants in this action.[4] The Court is left to infer, based on only the most conclusory of factual allegations, that these Congress (I) officials were in turn acting on defendant's orders. This the Court will not do.

Finally, the Amended Complaint also alleges that defendant shielded, protected and rewarded the perpetrators of the anti-Sikh riots after she took office in 1998. Construing the Amended Complaint with great generosity, the Court takes plaintiffs to be alleging that these actions rendered defendant liable as a sort of accessory-after-the-fact for the TVPA violations that occurred during the anti-Sikh riots. Courts have differed on whether the TVPA allows for aiding-and-abetting liability at all. See Chowdhury, 746 F.3d at 53 n.10 (declining to reach this question); Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005) (holding that "the [TVPA] reaches those who ordered, abetted, or assisted in the wrongful act"); Mastafa v. Chevron Corp., 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010) (holding that plain language of the TVPA does not permit aiding-and-abetting liability).

---

[4] For example, the Amended Complaint alleges that "Congress (I) leader and Member of Parliament HKL Bhagat organized, armed and led" the mob that murdered Mohender's father.

However, the Court need not decide that question here. The allegation that defendant shielded the perpetrators of the anti-Sikh riots would not state a claim under any theory of aiding and abetting liability that might conceivably be cognizable under the TVPA. The plain language of the TVPA provides for liability against any individual who "subjects an individual" to torture or extrajudicial killing. TVPA § 2(a)(1), 2(a)(2). Although some courts have found support for aiding-and-abetting liability in the legislative history of the TVPA, see Cabello v. Fernandez-Larios, 402 F.3d 1148, 1157-58 (11th Cir. 2005), this Court is aware of no authority, and plaintiffs have cited none, that would extend that theory so far as to include allegations of a cover-up perpetrated over a decade after the primary TVPA violations occurred.

In sum, the Amended Complaint fails to state a claim and must be dismissed in full. Plaintiffs have not requested leave to further amend, and in any event their allegations remain deficient despite their previous amendment. The Amended Complaint is therefore dismissed with prejudice.

### III. Anti-Suit Injunction

This Court has the power to enjoin litigants who abuse the judicial process from further vexatious litigation. See Sajir v. U.S. Lines, Inc., 792 F.2d 19, 23-25 (2d Cir. 1986). In order to determine whether such a sanction is appropriate, the factors that a court should consider include:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

Id. at 24.

"[A] filing injunction is an extraordinary remedy," Jenkins v. Eaton, No. 08–CV–0713, 2010 WL 5071995, at *2 (E.D.N.Y. Dec. 7, 2010), and defendant has not shown that one should be granted here. Defendant has identified just four other lawsuits filed by Sikhs for Justice in the federal district courts, none of which were filed against her. This is not sufficient to show a pattern of vexatious or duplicative litigation, especially considering that these suits were all filed against different defendants (with the exception of two suits against the most recent former Prime Minister of India, Manmohan Singh). Defendant also has not shown that lesser sanctions have ever been imposed on Sikhs for Justice, much less that they would be inadequate to protect the courts and parties. Indeed, defendant has not even requested any other sanctions.

The Amended Complaint in this action was certainly flawed. But the Court cannot say that plaintiffs filed it in bad faith, or that they have engaged in a pattern of vexatious litigation that warrants the extraordinary remedy of an anti-suit injunction. Defendant's motion is denied in this respect.

## CONCLUSION

Defendant's motion to dismiss at [20] is granted, and defendant's motion for an anti-suit injunction is denied. The Clerk is directed enter judgment in favor of defendant.

**SO ORDERED.**

                                                                                 U.S.D.J.

Dated: Brooklyn, New York
       June 9, 2014